# Richmond

## GLORIA EARLE NIX v. CLIFFORD M. NIX.

March 3, 1947.

Record No. 3158.

Present, Holt, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*James G. Martin & Son*, for the appellant.

*Tom E. Gilman* and *William G. Maupin*, for the appellee.

GREGORY, J., delivered the opinion of the court.

In the trial court Clifford M. Nix filed his bill of complaint against his wife, Gloria Earle Nix, an infant, praying that he be granted a divorce and the custody of their child.

After a hearing *ore tenus* the relief prayed for was granted.

The errors assigned are, that the evidence fails to sustain the decree, and that the court was not warranted in awarding the custody of the infant child to the father.

The original bill of complaint, which was filed on November 21, 1945, was grounded upon the alleged desertion of the wife. The allegation was rather indefinite. It was that Mrs. Nix "had neglected their home and child, was infatuated with others and continually running around with men, associating with those of ill repute and expressed herself as not caring for him, their child or home, and they separated on the 10th day of October, 1945, which conduct amounted to desertion." In the original bill there was no charge of adultery.

On the 11th of December, 1945, the court appointed James G. Martin guardian *ad litem* for Mrs. Nix, and on that date a demurrer and answer was filed to the original bill.

On January 12, 1946, the demurrer was sustained on the ground that the allegation contained in the bill was insufficient. On January 26, 1946, Nix filed an amended and

supplemental bill in which he added the charge of adultery. The allegation was in this language: "That on the 9th and 10th of February, 1945, complainant's said wife did commit an act or acts of adultery at the George Reynolds Hotel, Williamston, North Carolina, and at various other places and times, and the said acts of adultery were committed within the past five years, and were not by the procurement or connivance of your complainant." The prayer of the amended bill was that the complainant be granted a divorce *a vinculo matrimonii*, and that he be awarded the custody of their infant child.

On January 30, 1946, a demurrer and answer was duly filed to the amended bill and the court sustained the demurrer as to the allegations other than the one charging adultery.

There is conflict in the evidence but under elementary principles we are bound to affirm the decree of the trial court if it is supported by credible evidence. Nix and his wife were married in Norfolk county on September 4, 1942, at which time she was sixteen years of age and he was twenty. On October 16, 1942, he entered the armed service and was stationed at various places in the United States during his training period. He was visited by his wife, and in March, 1944, went overseas. He returned on September 27, 1945, and was joined by his wife. From that time until October 4, they cohabited as man and wife. On October 10, 1945, he left his wife but cohabited with her again on November 19, upon which last date he left her for good, and instituted the present suit on November 21, 1945. No question of condonation is involved.

The charge of adultery is sustained by the evidence of W. E. Sanderlin who was a brother-in-law of Nix. He testified that he committed adultery with Mrs. Nix on the night of February 10, 1945, in the hotel in Williamston, North Carolina.

Sanderlin also testified regarding an occasion on January 15, 1945, prior to the time that he claimed they were in North Carolina. Mrs. Sanderlin, his wife, was then in a hospital following the birth of a baby. Sanderlin stated that

Mrs. Nix called him on the telephone and requested him to meet her in Norfolk and go with her to visit Mrs. Sanderlin in the hospital. . He met her and they went to the hospital after having dined together. They left the hospital around nine o'clock and went to a restaurant where they had drinks from a bottle Sanderlin had. They joined two friends at the restaurant and went to dance at the Monticello Hotel, and danced until 12:30 or 1:00 o'clock in the morning. All of them then left the hotel and drove to Sanderlin's apartment at Great Bridge, 12 miles from Norfolk, where they had food and other drinks. Later the friends left Sanderlin and Mrs. Nix in his apartment. Sanderlin testified that Mrs. Nix undressed and went to bed with him and remained there until six o'clock the next morning, when he drove her in his car back to Norfolk. They did not have sexual intercourse that night though they remained in bed together for several hours. No reason is assigned why they did not have sexual intercourse on this occasion.

Sanderlin testified that Mrs. Nix some time later offered to give him another chance to have sexual intercourse with her, and Mrs. Nix, in testifying, said when asked the direct question if she had made any such statement to Sanderlin, "I don't recall any such statement. Such a thing was never in my mind." Mrs. Nix admitted that she was at Sanderlin's apartment but she claims that she left with the friends who had joined them and that she did not go to bed with him or take any drinks.

As to whether or not Mrs. Nix remained in Sanderlin's apartment after the friends had gone, the evidence is in direct conflict, Sanderlin saying that she did so remain and that she went to bed with him, while Mrs. Nix and the friends testified that she left as they, the friends, left, leaving together. Yet Nix testified that one of the friends had admitted to him that they did not leave together and that Mrs. Nix remained with Sanderlin.

. Sanderlin planned to take a hunting trip in North Carolina and mentioned the fact to Mrs. Nix, who, according to his testimony, suggested that she meet him in North Carolina.

Accordingly, on the evening of Friday, February 9, 1945, Sanderlin, with his friend, Willie Barnes and Barnes' wife and child, went to Elizabeth City, North Carolina. There Mrs. Barnes and the child were left. Sanderlin and Barnes returned to Norfolk county. They met Mrs. Nix at Terrace Club, around 12:30 in the morning and remained with her until 3:30, then they went to a restaurant for food and later Mrs. Nix was left at the home of a friend in Portlock, near Norfolk.

According to Sanderlin he and Barnes went to the home of the latter and drove from there to a point in North Carolina where they hunted until three o'clock in the afternoon. By prearrangement, Mrs. Nix was to take the three o'clock bus from Norfolk to Edenton, North Carolina, where she was to be met by Sanderlin. She met him there and hotel accommodations were arranged at Williamston, North Carolina, at the George Reynolds hotel. They registered as E. S. Wilson and wife, Norfolk, Virginia. Barnes also registered. Mrs. Nix carried a suitcase containing clothing, toilet articles, a bottle of whiskey, and a bottle of rum, according to the testimony of Sanderlin.

They occupied the same room, and after visiting a dance hall they returned to the hotel and spent the night together, during which time, according to Sanderlin, he had sexual intercourse with Mrs. Nix. The next day they returned to Norfolk. No other intimacy between these two parties is disclosed by the record.

Barnes testified that he was with Sanderlin and Mrs. Nix in Williamston, and saw them in the hotel room together. The registration cards from the George Reynolds hotel in Williamston were produced as exhibits. One card discloses the registration in the name of E. S. Wilson and wife, Norfolk, Virginia, and the other in the name of Cecil Barnes.

Mrs. Nix denied being in North Carolina. She denied having committed adultery with Sanderlin, but she did not give any account of her movements on February 10 and 11.

Unless the evidence upon which the trial court founded its decree is incredible and unbelievable upon its face, mak-

ing it unworthy of acceptance by the trial court, we must affirm. What is there about the evidence that would warrant us in pronouncing as a matter of law that it challenges belief? The most that can be said about it is that the principal witness, Sanderlin, is the brother-in-law of Nix, and he is so base that he debauched the wife of his brother-in-law and then told about it.

Of course, the conduct of Sanderlin has been reprehensible and it is stamped with our strong disapproval. He has confessed that he was guilty of a designed assignation with Mrs. Nix who was an infant under twenty years of age, while her husband was overseas, he (Sanderlin) being at the time a married man over thirty years of age, living with his wife and young baby.

However just we may be in condemning Sanderlin's conduct in his relations with Mrs. Nix, such condemnation is not the sole measuring stick by which to gauge the legality of the decree. He has testified that he committed adultery with her. She has denied it. Corroborating evidence supports his testimony. That he and Mrs. Nix were on very familiar terms is evidenced by the fact that they dined, drank, and danced together late at night. She went to his apartment twelve miles in the country late at night while his wife was not there.

Sanderlin is corroborated in his testimony regarding the North Carolina trip by witness Barnes. Barnes saw them in the hotel room together. They were registered in the hotel as man and wife. This is shown by the registry cards introduced as exhibits. Mrs. Nix has not attempted to prove her whereabouts on that Saturday and Sunday. The most that we know is that she left work at 12:30 p. m. on Saturday and returned to work the following Monday morning.

The substantial portion of the evidence has been largely corroborated and we think it supports the finding of the trial court. It is true there is conflict. Mrs. Nix produces evidence of good character. Her minister spoke in her behalf. The trial court, however, considered all these things in arriving at its conclusion.

■ ■ The finding of the trial court upon an *ore tenus* hearing where the evidence is conflicting compels us to accept that upon which the finding was based unless it is incredible and unworthy of belief. It is equivalent to the finding of a jury upon conflicting evidence in so far as our review is concerned. For the later cases, see Digest of Va. & W. Va. Reports (Michie), Vol. 1, Perm. Supp., pp. 167-176.

■ We are of opinion that the decree is supported by credible evidence and should be affirmed.

■ ■ In cases of this nature the general rule is that the innocent parent is entitled to the custody of children. In this case there is no fact or circumstance shown by the record which would require us to withhold the application of the general rule. The appellee lives with his mother. She has looked after this child nearly all of its short life, and has expressed her willingness to- continue to care for it. Temporary custody was transferred to the appellant pending the outcome of this suit. She works every day and is at home only after working hours. She leaves the child with her sister while she is at work. The trial court awarded the custody of the child to the father. There appears no valid reason for altering or changing the decision of the trial court in this respect. Of course, the appellant may visit the child at such times and places as are convenient, and the trial court may, from time to time, on petition, revise and alter the decree concerning the care, custody, and maintenance of the child (Code, section 5111).

Counsel for the appellant, who was also guardian *ad litem* for Mrs. Nix, is awarded an additional fee of $150 for prosecuting this appeal.

The decree is affirmed.

*Affirmed.*