# Richmond

J. R. HAUGHTON AND OTHERS v. CHARLES M. LANKFORD, JR.,
COMMISSIONER OF FISHERIES, ETC.

March 7, 1949.

Record No. 3444.

Present, All the Justices.

The opinion states the case.

*F. Lee Ford* and *Beecher E. Stallard*, for the appellants.

*J. Lindsay Almond, Jr., Attorney General*, and *Walter E. Rogers, Assistant Attorney General*, for the appellees.

STAPLES, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the city of Richmond. The appellants' petition below, which is in form a proceeding for a declaratory judgment, challenges as unconstitutional certain provisions of section 3218 of the Code of Virginia. This section prohibits the carrying out of this State any seed oysters taken from the natural rocks, beds, or shoals in the waters of the Commonwealth, unless a permit so to do has been first obtained from the Commissioner of Fisheries.

The particular provisions here under attack are the following:

"* * * it shall be the duty of the said Commissioner to grant such permit, and designate the tax to be paid of not more than two cents per bushel on each bushel of oysters, whenever after examination by him of the seed areas he shall ascertain that it will not injure or deplete said seed areas to grant such permits, and that the supply of seed oysters is in excess of demand for seed oysters by planters in the State of Virginia; and provided that the Commissioner shall have power to cease granting of such permits whenever he shall ascertain that said seed areas are becoming depleted, and that to continue to grant such permits would seriously injure the same."

Appellant, J. R. Haughton, is engaged in the business of tonging seed oysters, and appellant, Oyster Tongers and Seafood Workers Union, is composed of members who are engaged in the same occupation. Appellant Cornelius Campbell is a resident of New Jersey, and alleges that on or about September 29, 1947, he entered into a contract with appellant Haughton for the purchase of 8000 bushels of seed oysters which he proposed to ship out of Virginia. Appellee, Charles M. Lankford, Jr., Virginia Commissioner of Fisheries, is a party defendant to the petition.

On September 23, 1947, the defendant, Lankford, had issued the following order:

"After hearing statements adduced on behalf of those in

favor of the continuance of the issuance of permits to take oysters from the James River seed areas out of State, consultation with the Associate Members of the Commission of Fisheries, the Director and a Member of the staff of the Virginia Fisheries Laboratory, and other agents appointed to investigate the situation; and in view of the large increase in acreage of leased oyster ground in Virginia and upon information that the supply of James River seed oysters will be lower during the coming season than in past years; I have concluded that:

"The seed areas are depleted for the time being to the extent that to continue to grant such permits will seriously injure same and the supply of seed oysters is not in excess of the demand of the planters in the State of Virginia; and, therefore, in accordance with the obligation devolving upon the Commissioner of Fisheries under Section 3218 of the Code of Virginia, it has been decided that no such pemits will be granted for the time being, and this order shall continue in effect for an indefinite period, but in no event longer than the present oyster season. This order is subject to change without notice, and in the event the anticipated demand of the State planters in Virginia does not develop and if and when the supply of seed oysters in James River should be such that areas will not be depleted upon the granting of such permits, then said order will be revoked at once."

The petition prayed for an injunction restraining the defendant Lankford from interfering with the sale and delivery by any of the petitioners or members of the tongers union of any seed oysters for out-of-State shipment, or with the removal from the State of any oysters so sold. The grounds upon which the injunction was sought are that section 3218 of the Code and the foregoing order entered pursuant thereto are in violation of the Constitutions of Virginia and of the United States, in that they:

"(a) Impair the Obligation of the contracts of your petitioners, and

"(b) Take, deprive and damage the property of your petitioners without due process of law, and

"(c) Deprive your petitioners of the enjoyment of life, and liberty, with the means of acquiring and possessing property and pursuing and obtaining happiness and safety in their chosen work or vocation, and

"(d) Unlawfully restrain, regulate and interfere with the commerce among the several states."

Temporary injunction orders were entered in accordance with the prayer of the petition effective from October 21, 1947, until December 17, 1947.

On December 29, 1947, the final decree was entered adjudicating that section 3218 of the Code is constitutional and valid in all respects, and that the defendant Lankford, Commissioner of Fisheries, was justified by the facts in determining that the order complained of was necessary to conserve the supply of seed oysters as required by that section.

With reference to the contention that the order discontinuing the granting of permits for the shipment of seed oysters is in violation of section 10 of Article I of the Constitution of the United States because it impairs the obligation of the contract for the sale of such oysters by Haughton to Campbell for out-of-State shipment, it appears from the record that it is highly probable that the contract, if any, was made after the order was issued. If so, the obligation of the contract was necessarily subject to the restrictions then in force.

But even if such a sale was made prior to the issuance of the order, or even prior to the enactment of the statute under which the order was made, it is well-settled that a contract of this kind must be considered as containing an implied condition that it is subject to the exercise of the State's regulatory police power. Such sovereign power of the government to protect the general welfare of the people of the State is paramount to any rights which may be acquired by individuals by virtue of any contracts between them. This principle is so well-established that it needs

no elaboration. See *Home Bldg., etc., Ass'n* v. *Blaisdell*, 290 U. S. 398, 436-439, 54 S. Ct. 231, 239, 240, 78 L. Ed. 413, 88 A. L. R. 1481, and cases there cited; *Veix* v. *Sixth Ward Bldg., etc., Ass'n*, 310 U. S. 32, 38, 60 S. Ct. 792, 794, 84 L. Ed. 1061; *East New York Sav. Bank* v. *Hahn*, 326 U. S. 230, 232, 66 S. Ct. 69, 70, 90 L. Ed. 34, 160 A. L. R. 1279.

In support of the second and third grounds of objection quoted above from the petition, the appellants argue that the appellee Commissioner had exercised the power to cease granting permits in an unreasonable and arbitrary manner. They assert that the evidence fails to show any depletion of seed oysters or need for the order, or that it would, in fact, conserve the supply. They claim that the only effect of the action of the Commissioner was to benefit the oyster planters of Virginia because it enabled them, through concerted action, to purchase from the appellant tongers the seed oysters gathered by them at unreasonably low prices.

The Attorney General suggests that perhaps the question of the validity of the order of the Commissioner and the provision of the statute itself, which confers the power upon the Commissioner to discontinue the granting of such permits, is moot, since no additional orders of like kind have been issued and there is little probability that any will be in the near future.

The possession by the Commissioner of the power to issue further orders imports its potential exercise and prolongs the existence of the controversy. It is not necessary that the rights asserted or claimed by the defendants be actually invaded again in order to preserve the jurisdiction of the court in a proceeding of this nature. It is enough that the controversy still exists. *American Nat. Bank, etc., Co.* v. *Kushner*, 162 Va. 378, 174 S. E. 777. In fact, if the order had been a permanent one, a proceeding for a declaratory judgment would not have been appropriate, and it would have been necessary to treat the petition of appellants as an ordinary bill in equity seeking injunctive relief. It is only on the theory that the order was a tempo-

rary one, and its expiration would render the question of its validity moot in an ordinary chancery proceeding, that the need for a declaratory judgment could arise.

"They" (declaratory judgments) "are intended to supplement rather than to supersede ordinary causes of action and to relieve litigants of the common-law rule that no declaration of rights may be judicially adjudged until a right has been violated. Preventive relief is the moving purpose. Whether or not jurisdiction shall be taken is within the sound discretion of the trial court. Something more than an 'actual controversy' is necessary. In common cases where a right has matured or a wrong has been suffered, customary processes of the court, where they are ample and adequate, should be adopted." *American Nat. Bank, etc., Co.* v. *Kushner, supra,* 162 Va., at page 386.

The facts alleged in the petition filed in the circuit court show that, if the petitioners possessed the rights which they claimed, such rights had already been violated by the Commissioner's order before the petition was filed. Therefore, if the violation had been a permanent one, an ordinary bill in equity would have sufficed and there would have been no occasion to seek a declaratory judgment. Whether jurisdiction should be taken of such a proceeding rests in the discretion of the court. The circuit court entertained such jurisdiction and we think that, under the circumstances which have since developed, we should decide the question of the constitutionality of the order and of the statutory provision in question for the future guidance of the parties in interest.

First, as to the validity of the order.

Upon the question whether the facts were such as to justify the Commissioner in concluding that the supply for the 1947-1948 season was inadequate to supply the "demand for seed oysters by planters in the State of Virginia" the evidence is conflicting.

The testimony was heard by the trial judge *ore tenus* and his finding, that the facts justified the action of the appellee Commissioner, must be held to resolve all conflicts

in favor of the appellee. Or, as said by Mr. Justice Gregory in *Nix* v. *Nix*, 186 Va. 14, 20, 41 S. E. (2d) 345, "The finding of the trial court upon an *ore tenus* hearing where the evidence is conflicting compels us to accept that upon which the finding was based unless it is incredible and unworthy of belief. It is equivalent to the finding of a jury upon conflicting evidence in so far as our review is concerned. For the later cases, see Digest of Va. & W. Va. Reports (Michie), Vol. 1, Perm. Supp., pp. 167-176." See also, *Nicholas* v. *Commonwealth*, 186 Va. 315, 322, 42 S. E. (2d) 306.

There was abundant evidence to show that the appellee Commissioner made a proper investigation to determine the prospective supply of seed oysters, these being found principally in certain portions of the James River; that for the two or three preceding seasons the supply of seed oysters had been diminishing, and the prospect for the then approaching season was for a very much smaller supply. In the testimony taken before the court on October 20 and 21, a month after the Commissioner's order was issued, numerous witnesses testified to the effect that the quantity of seed oysters found on the rocks and bottoms had diminished very materially, and, in fact, was not more than fifty per cent of the supply for the preceding year.

There was also testimony of numerous witnesses that there was a greater demand for seed oysters at that time than there had ever been, and that the price being paid had ranged from fifty to fifty-five cents per bushel and was higher than at the corresponding period of the season of the year before; in fact, that the supply was not more than half enough to meet the demand for seed oysters by the Virginia planters. Witnesses testified also that there were just as many buyers with their boats in the river as in former years, and that there was keen competition among the Virginia planters who sought to buy them.

Accepting this testimony as true, as we must under the rule, it follows that the conclusion of the appellee Commissioner, that said oysters would be in short supply was fully substantiated by subsequent developments.

It would serve no good purpose to discuss the evidence in greater detail. Clearly, the finding of the trial court, which sustains the validity of the Commissioner's order, must be held to be amply supported by the evidence.

Second, as to the constitutionality of the statute.

The appellants contend that the prohibitions against shipment of seed oysters out of the State, and their sale by the oyster tongers for the purpose of such shipment, "unlawfully restrain, regulate and interfere with the commerce among the several states." They assume that the regulation of the shipment of oysters taken from the natural oyster rocks, beds and shoals in the waters of the State amounts only to a regulation of ordinary commercial transactions. We do not agree. It was well-established as long ago as 1876, in the case of *McCready v. Commonwealth*, 27 Gratt. (68 Va.) 985, that the navigable waters and the soil under them are the property of the Commonwealth. Or, as said in the opinion of Judge Anderson, "The lands which may be used for the purpose of growing and cultivating oysters, as well as those upon which are her natural oyster beds, which underly her navigable waters, Virginia claims not only sovereignty over, but also an ownership in the soil. If the state has the ownership in the soil, and the sovereign dominion over it, unquestionably she had the right to prohibit the deposit or planting of oysters upon it, or the use of it for any purpose, by non-residents or others than citizens of the state." (27 Gratt., at page 989).

The provision prohibiting the planting of oysters in Virginia waters by nonresidents of the State was challenged in that case by the defendant, McCready, upon the ground that the right to plant such oysters was one of the privileges and immunities secured to all citizens of the United States by Article IV, section 2, of the Constitution of the United States. It was also challenged on the ground that it violated the commerce clause. This court held, however, in Judge Anderson's elaborate opinion, that these constitutional provisions were not violated by the statute and affirmed the judgment of conviction.

This judgment affirming McCready's conviction was reviewed by the Supreme Court of the United States in *McCready* v. *Commonwealth*, 94 U. S. 391, 24 L. Ed. 248. In an illuminating opinion by Mr. Chief Justice Waite, Virginia's ownership of the waters and underlying land and rocks, as held in the opinion of Judge Anderson, was sustained. The principle that inland waters and the soil under them, including oysters growing thereon, are the property of the several States has since been reiterated in numerous decisions of the Supreme Court of the United States—the most recent being the so-called "Tidelands Oil Case," *United States* v. *California*, 332 U. S. 19, 67 S. Ct. 1658, 91 L. Ed. 1889.

The effect of the challenged provision in section 3218 of the Code, quoted *supra*, is to dedicate the supply of seed oysters in Virginia waters to the purpose of being transferred and planted in other waters of the State to the extent necessary to fill the demand for them. It is manifest that the statute contemplates that only the surplus may be shipped out of the State. The statute does not give the Commissioner authority to grant permits for such shipments unless "after examination by him of the seed areas he shall ascertain that it will not injure or deplete said seed areas to grant such permits, and that the supply of seed oysters is in excess of demand for seed oysters by planters in the State of Virginia; * * *." The finding of these facts by the Commissioner is a condition precedent to his authority to grant such a permit.

It was not necessary for the Commissioner to promulgate an *order*, as he terms it, that no more such permits would be issued. He might simply have refused to grant them on the ground that he was unable to conclude that the supply was adequate for State demands, or that injury or depletion would not result from out-of-State shipments, and therefore was without authority to do so. The statute seems to contemplate, however, that when such a condition occurs public notice of some kind should be given so as to insure uniform treatment to all persons engaged in the business.

There was uncontradicted evidence that neither Maryland nor New Jersey allows any of its seed oysters to be shipped beyond their borders. Virginia permits the shipment of any surplus over State requirements, which is a more liberal policy.

The Commonwealth, being the owner of all the lands in the State which can be utilized for the cultivation of oysters, has dedicated the natural oyster beds to the use and benefit of her citizens. Section 175 of the Constitution of Virginia is as follows:

"The natural oyster beds, rocks and shoals, in the waters of this State shall not be leased, rented or sold, but shall be held in trust for the benefit of the people of this State, subject to such regulations and restrictions as the General Assembly may prescribe, but the General Assembly may, from time to time, define and determine such natural beds, rocks or shoals by surveys or otherwise."

The area of the natural beds, rocks and shoals have been determined by what is generally known as the Baylor Survey. Submerged lands outside that area are leased to residents of the State who desire to engage in the business of planting and growing edible oysters. They buy the "seed oysters" which are tonged from the natural beds within the survey and which are the subject of this litigation.

In conformity with the above constitutional mandate, the General Assembly has enacted numerous statutes establishing a comprehensive system for regulating the commercial seafood industry. The cardinal principle upon which it is based is that the interests of the citizens of Virginia, and especially those engaged in that industry, are paramount.

The welfare of the oyster branch of the industry is obviously dependent upon a continuous supply of seed oysters. To permit its depletion by removal of the seed to out-of-State waters would not only be unwise, but would be destructive of the industry as well as of the value of the lands of the State dedicated to that purpose.

Appellants argue that once the seed oysters have been possessed by the tonger they are his absolute property and

he may dispose of them in any manner he desires, but this is not true. When he takes the seed oyster he does so with the knowledge and upon the condition imposed by the statute that neither he nor his vendee can carry it out of the State without a permit, and further that a permit will not be granted when the supply of seed oysters would thereby be rendered inadequate to meet the needs of the Virginia oyster industry. His ownership of the seed oyster is, therefore, not absolute, but, at its very inception, is impressed with that condition as to its disposition.

We hold, therefore, that the seed oyster taken from Virginia waters does not become eligible for shipment in interstate commerce unless and until a permit for such shipment is granted. Therefore, since it is not a subject of such commerce until such permit is granted, the State may prohibit out-of-State shipments without running counter to the commerce clause. Such action by the State is not a measure to regulate commerce but is designed to conserve one of the natural resources of the State.

The appellants also excepted to the decree appealed from on the ground that the tax imposed by section 3218 upon seed oysters shipped out of the State is invalid because it constitutes an unreasonable interference with interstate commerce.

Generally speaking, all questions relating to taxation may be raised and disposed of in proceedings provided for by the State Tax Code. Appellants' petition prayed for injunctive relief against the enforcement of the tax although this is prohibited by section 416 of the Tax Code, which is as follows:

"No suit for the purpose of restraining the assessment or collection of any tax, State or local, shall be maintained in any court of this Commonwealth, except when the party has no adequate remedy at law."

The tax imposed by section 3218 is required to be assessed by the Commissioner of Fisheries upon all seed oysters to be carried outside the State at a rate of not more than two cents per bushel. This is a State property tax, and

section 410 of the Tax Code provides an adequate remedy by application to the appropriate circuit or city court for relief from the assessment if improper. If the tax has been paid, the court is empowered to order a refund.

. We call attention to the foregoing because, while the courts have reasonable discretion in determining whether to exercise jurisdiction in declaratory judgment proceedings, cases involving questions of tax liability should be scrutinized with care to the end that the due and orderly administration of the State's fiscal affairs be not unduly interfered with.

The circuit court sustained the validity of the tax of two cents per bushel on seed oysters removed from the State. The appellants challenge the tax on the ground that it discriminates unreasonably against interstate commerce because no tax is laid on seed oysters sold for planting in the waters of the State.

This contention loses sight of the fact that the oyster sold to the Virginia planters as a seed is later taxed, when it has grown to edible size, at a much higher rate *per oyster*. The tax imposed on edible oysters, whether consumed within or shipped outside the State, is at the rate of one cent per bushel. Code of Virginia, section 3216. But while seed oysters usually run about two thousand to a bushel, the number of edible oysters in a bushel measure is only a small fraction of that figure. To tax the seed oyster sold to the Virginia planter and then tax it again when it is sold as a full grown oyster would be a form of double taxation which the General Assembly evidently did not deem it wise to impose. Obviously, the seed oyster carried outside the State is not thereafter liable to a Virginia tax.

The General Assembly possesses broad powers in classifying its subjects of taxation. *Richmond* v. *Commonwealth*, 188 Va. 600, 50 S. E. (2d) 654. We hold that it has not exceeded or abused those powers in placing seed oysters carried out of the State in a class for purposes of taxation separate from those sold for planting in Virginia waters. Both are eventually taxed, but the time of levying the tax

is different. Furthermore, the proceeds of the tax are devoted exclusively to the purpose of fostering the Virginia seafood industry.

The appellants also argue that the tax is unconstitutional because the statute delegates to the Commissioner of Fisheries the power to reduce the rate of two cents per bushel without providing any standard to guide this officer in arriving at the amount of the tax to be levied. This question was not raised or considered in the trial court and is therefore not properly before us here for review. *Stevens v. Mirakian*, 177 Va. 123, 129, 12 S. E. (2d) 780, and authorities therein referred to.

The decree appealed from is affirmed.

*Affirmed.*