## 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡

FAITH VAN CLIEF SEMMES v. SAMUEL PREWITT SEMMES, JR.

June 22, 1959.

Record No. 4917.

Present, All the Justices.

The opinion states the case.

*Aubrey R. Bowles, Jr.* (*C. Armonde Paxson; Bowles, Anderson, Boyd, Clarke & Herod; Paxson, Marshall & Smith,* on brief), for the appellant.

*John S. Battle, Sr.* and *John S. Battle, Jr.* (*Perkins, Battle & Minor,* on brief), for the appellee.

SNEAD, J., delivered the opinion of the court.

Appellant, Faith Van Clief Semmes (now Faith Van Clief Ault), was awarded an appeal from a decree rendered December 30, 1957

whereby the court below denied her motion to modify a decree entered June 15, 1956 concerning the custody of her infant daughter, Faith Cameron Semmes, whose custody had been granted the father, Samuel Prewitt Semmes, Jr., appellee, subject to certain visitation privileges to appellant.

The litigants were married at Charlottesville, Virginia, on August 12, 1950. At that time appellant was age 18 and appellee was 22 years old. Their daughter, Faith, was born on March 26, 1952 and no other children were born of this union. On August 4, 1953 Semmes and his wife executed a property settlement and custody agreement. In it they agreed, among other things, that appellee would have custody of the child until this arrangement should be subsequently changed by agreement or by a court of competent jurisdiction. It was further agreed that the child would remain with appellant from June 1 to August 31 of each year. Thereafter, appellant filed her bill for a divorce in the Circuit Court of Albemarle County. On January 19, 1954 she was granted a divorce *a mensa et thoro* on the grounds of desertion wherein the above agreement was ratified, approved and confirmed by the decree. This decree was merged into a decree of divorce *a vinculo matrimonii* on September 21, 1954 and other terms in the former decree were perpetuated.

Appellant married Bromwell Ault, Jr., her present husband, on January 22, 1955 and since then has resided with him in New York City. While Faith was visiting her in accordance with the custody agreement, appellant wrote appellee on July 7, 1955 asking for his consent to a change in the agreement and the decree so that she would have full custody, subject to visitation rights in him. This request was promptly refused.

On August 10, 1955 appellant filed a petition in which she alleged that the child "was and has been emotionally, physically, and psychologically disturbed and bewildered, and has not enjoyed the comforts, security and guidance which only a mother can provide." She further alleged that she was convinced that Faith should be under her care where she would regain a feeling of security. She prayed that the court "proceed to hear evidence of both parties, looking to a change or perpetuation of said agreement, as the Court, in its mature judgment, may determine to be to the best interests of said child."

An amendment to the petition was filed August 19, 1955. There appellant alleged that since the execution of the agreement, dated

August 4, 1953, the circumstances of the principals had materially changed. She asserted she was happily married; that she possessed "a wholesome and rounded domestic background for the proper rearing of a girl child;" that appellee was not married and lacked appropriate living arrangements "for the proper grooming, education and training of a girl child;" that he was not mentally, morally, temperamentally or psychologically equipped to properly rear her, and that while in his custody Faith had been committed to associations and environments not calculated for her best interests.

Appellee, in his answer and cross-petition, denied the material charges, and asserted that appellant was not a fit person to have custody of the child since she had demonstrated by her conduct that she is immoral, irresponsible and unstable; that such well-fixed characteristics were not altered by the fact that appellant had been remarried for a period of 7 months prior to the filing of her petition; that while Faith was under his care, she was happy, healthy and well adjusted, and that if the child was suffering from any emotional or physical disturbance as claimed by appellant, it was due to appellant's influence on her since the visitation period commenced on June 1, 1955. He prayed for her absolute and full custody, subject only to the privilege of appellant to visit her for reasonable times and at reasonable intervals while under his care and custody.

Extensive depositions were taken and filed on behalf of both litigants and an *ore tenus* hearing which consumed four and one-half days was had in November, 1955. In the chancellor's written opinion filed on January 11, 1956, he observed, among other things, that the conduct of both litigants "during the time of their marriage was such as to recommend neither of them suitable persons to raise an infant child;" that Ault, appellant's present husband, appeared to be in general "a substantial and reliable person;" that there was no evidence of improper conduct on appellant's part since her marriage to Ault, and that there was evidence that they "appear to be leading a normal life." He also found there was no evidence of any improper conduct by appellee since the divorce; that the evidence showed his way of life appeared to have changed and he has been a "devoted and attentive" father to the child who was cared for by a nurse in a home occupied by him and an unmarried sister.

The chancellor further stated: "Although I am convinced that the mother was the effective cause of the separation, if I were equally convinced that there would be no reversion to her former course

of conduct, I should not hesitate to award the custody of the child to her. The evidence before me indicates a course of immorality extending from before her marriage to Mr. Semmes to the time of her marriage with Mr. Ault. I cannot assume that ten months of good conduct during most of which time Mrs. Ault was pregnant is sufficient to show such a complete change of character as to justify committing to her care the infant girl child."

He concluded that the custody of the child should remain with the father, but that the mother should not be deprived of all rights of visitation, and that the period provided for in the agreement should be reduced.

On June 12, 1956, appellant filed a motion for leave to offer further and contemporary evidence to show that there had been no reversion to her former course of conduct since the hearing in November, 1955. This motion was overruled in the decree entered June 15, 1956 which was based on the opinion filed on January 11, 1956. The decree reduced the visitation period as fixed in the custody agreement and confirmed by former decrees. It provided: "* * * [T]hat, subject to further order of the Court, the custody and control of Faith Cameron Semmes be awarded to and fixed with Samuel Prewitt Semmes, Jr., subject to the right of Faith Van Clief Semmes to visit said child while in the custody of Samuel Prewitt Semmes, Jr., at reasonable times, for reasonable intervals and upon reasonable notice, and to have the child visit her during the last three weeks of August in each year, excluding time necessary for travel, * * *." Jurisdiction of the litigants and the child was retained for the purpose of enforcing the decree or any future modification of its provisions.

On May 16, 1957, appellant filed a motion to modify that part of the decree of June 15, 1956 relating to the custody of Faith and award custody to her subject to provision for periods of temporary custody and of visitation by appellee as the court might deem reasonable. She alleged that appellee had married on December 28, 1956 in Los Angeles, California, Virginia Scripps Gardner, who was divorced from her husband on January 20, 1956 and was granted custody of her two boys born June 19, 1950 and November 29, 1952; that she (appellant) had become a mature and stable woman, and that she has been competent and successful in rearing her infant son, Courtland Bromwell Ault, born of her union to Ault, to whom Faith had developed a strong child's affection. She further alleged:

"* * * [T]hat a sufficient time has elapsed to warrant the reasonable conclusion from their very nature that such mode of life, habits, activities and general conduct and the character of her said home, associates and family life have attained permanent status, and will continue; that it is reasonable to conclude therefrom that there will be no reversion on the part of the complainant to any former course of conduct that may have been deemed by the Court to indicate that complainant was not at one time an entirely fit custodian of her infant child."

Appellee's demurrer to the motion was overruled and his answer was duly filed. In it he denied the material allegations and asserted that nothing was alleged to justify a modification of the decree of June 15, 1956. He stated that he was presently happily married and that Faith enjoyed a home life and parental influence of the highest order; that she had become well adjusted and that the change sought would be detrimental to her welfare.

Depositions were taken on behalf of appellant in New York City and on behalf of appellee in Los Angeles where he resided. A three day *ore tenus* hearing on the motion to modify commenced on September 23, 1957. The court filed its second written opinion on October 29, 1957 in which counsel were advised that the prayer for a change in custody was denied. There the chancellor stated in part:

"The evidence presented at the recent hearing although fairly extensive may be summed up rather briefly. On behalf of the mother it was shown that since her marriage to Mr. Ault there has been no return to the type of conduct of which she was formerly guilty. It was further shown that she is an exceptional mother to the child born of her second marriage, that the home life is a normal and happy one, that she has become active in church and other welfare work involving children, and that the child Faith would in her home have not only all the advantages which money can supply, but also loving care, and a satisfactory environment. Persons well qualified to speak, except that in some cases their opportunities for observation were somewhat limited, expressed the opinion that she was now mature, or maturing, and stable from an emotional standpoint. In other words, assuming that there would be no return to her former conduct, the mother would be an entirely suitable person to care for the child, and the environment would be entirely favorable.

"Looking now to the situation in the father's home, although far

fewer witnesses testified, the picture presented by evidence, which I have no reason to reject, is very similar. The father has remarried and his present wife is an intelligent, well educated woman, with two sons by a former marriage, one of whom is near the age of the child, Faith. She is also at present expecting a child by Mr. Semmes. The description of the home life of these parties also reveals a normal and happy home, in which Faith receives loving care and all the advantages which money may secure.

"The inferences which are drawn by counsel for Mrs. Ault that the present Mrs. Semmes is not a suitable person to rear a young girl are entirely unjustified. Nor do I find that the misdeeds of Mrs. Semmes' brother, whom she has not seen for years, or the traffic violation of her sister, if relevant, constitute any substantial threat to the environment in which the child now lives.

"In other words, the evidence shows that with either parent the child would have a suitable home, a good education, a normal and healthy environment, and suitable and loving parents.

"This being the case, what considerations would justify an alteration of the present arrangement? Certainly, the Court cannot from time to time hear evidence and make a determination that both homes are suitable, and both parents proper custodians, but that there is a slight balance in favor of one or the other and a change should therefore be made. Such a policy would be not only legally unsound, but practically detrimental to the welfare of the child.

"The principle that a mother is prima facie the proper custodian of a young child, and particularly a female child, is well settled, but it must be borne in mind that the mother in this case has been shown to be an unsuitable custodian only two, or at the most, three years ago. Whether the change in her environment has effected a permanent change in her character, or whether subsequent adverse influences, which are sure to occur, may result in an adverse effect are, at best, matters of speculation and opinion.

"Moreover, the child is, according to the testimony, in good hands and is well adjusted. She has been in her father's care for most of four years. What effect a change will have on her is uncertain. At the previous hearing psychiatrists on both sides testified to the necessity for a stable base, and to the harmful effects of change. At the present hearing Dr. Allen, in whose opinion I have great confidence, stated that he would not say that a change would be harmful but that it would involve risk.

"I am of the opinion that the mother has not borne the burden of showing that the welfare of the child requires that a change be made. On the other hand, a change does involve two risks which I do not feel should be taken."

By decree of December 30, 1957, appellant's motion to modify the decree of June 15, 1956 was overruled and the decree was re-affirmed and continued in all respects, to which action of the court appellant objected and excepted. Thus the paramount issue is whether the evidence shows that the interests of the child would be best served by a modification of the custody provisions in the decree of June 15, 1956 because of a change in conditions and circumstances since its entry.

We have concluded that it would be detrimental to the child's welfare and serve no good purpose as far as the litigants are concerned to review the evidence regarding the course of conduct of appellant prior to her marriage to appellee and up to the time of her marriage to Ault, and also the conduct of appellee prior to his marriage to appellant and up to the time of their divorce. Suffice it to say her conduct was horrible, execrable, shocking and bordering on the unbelievable. His was also terrible. We agree with the chancellor's statement in his first opinion that their behavior "during the time of their marriage was such as to recommend neither of them suitable persons to raise an infant child."

"In Virginia, we have established the rule that the welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. All other matters are subordinate." (Citing cases) *Mullen* v. *Mullen*, 188 Va. 259, 269, 270, 49 S. E. 2d 349.

The court in its first opinion after finding that there was no evidence of improper conduct on appellant's part since her marriage to Ault and that they appeared to be leading a normal life, stated: "Although I am convinced that the mother was the effective cause of the separation, if I were equally convinced that there would be no reversion to her former course of conduct, I should not hesitate to award the custody of the child to her." In the second opinion, after finding that appellant had not returned to her former course of conduct, the court said: "* * * [A]ssuming that there would be no return to her former conduct, the mother would be an entirely suitable person to care for the child, and the environment would be entirely favorable." The chancellor recognized the doctrine that

generally children of tender years, especially girls, should be awarded the mother in preference to the father where they will be equally well cared for. *Mullen* v. *Mullen, supra,* pp. 270, 271; *Brooks* v. *Brooks,* 200 Va. 530, 539, 106 S. E. 2d 611. It was not applied here because appellant had been proven to be an unsuitable custodian two or three years previously and because he questioned whether "the change in her environment had effected a permanent change in her character, or whether adverse influences, which are sure to occur, may result in an adverse effect * * *." He also stated it was uncertain what effect a change in custody would have on Faith. The chancellor concluded that appellant had not borne the burden of showing that the best interests of the child required a change in custody and further that he did not deem it advisable to take the risks involved in such a change.

We think the chancellor was justified in not awarding custody to the mother at that time. However, it may be argued that some risks are involved at appellee's home in Los Angeles. Besides her father, Faith is now living with a step-mother, two step-brothers and a half-brother or half-sister.

From the time of her marriage to Ault until the hearing in September 1957 two years and eight months had expired and there was no reversion to her former course of conduct. For that improvement she should be commended and encouraged. She has been an exceptional mother to her son born of the happy marriage to Ault. She has become active in the church and welfare organizations involving children. If a mother is a proper and suitable person, close ties with her child are unquestionably for the best interests of the child.

In *Mullen* v. *Mullen, supra,* pp. 272, 273 we said:

"The advisability of dividing or alternating the custody of the child has been seriously considered. While there are certain disadvantages in such division, there are also important advantages and benefits. It gives the child the experience of two separate homes. The child is entitled to the love, advice, and training of both her father and her mother. Frequent associations, contact, and friendly relations with both of her parents will protect her future welfare if one of her parents should die. It gives recognition to the rights of parents who have performed obligations as parents." See *Andrews* v. *Geyer,* 200 Va. 107, 104 S. E. 2d 747.

We think the welfare of this child, who was 5 years of age at the time of the hearing in September 1957, required a reinstatement

of the visitation period with appellant as was provided for in the custody agreement and confirmed by the divorce decrees, making any adjustment that might be necessary in order not to interfere with the child's regular school term. Future events will determine whether the child's welfare requires a cut-off, reduction or enlargement in visitation privileges or whether full custody should be awarded appellant with or without privileges of visitation accorded appellee. The court is provided that authority in § 20-108, Code 1950, which reads:

"The court may, from time to time after decreeing as provided in the preceding section, on petition of either of the parents, or on its own motion or upon petition of any probation officer or superintendent of public welfare, which petition shall set forth the reasons for the relief sought, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require."

We find no reversible error in the court's action in excluding certain evidence pertaining to influences likely to be exerted on the child while in the custody of appellee. The rejection of certain evidence offered to show the qualifications of Ault and the class of children and other associates Faith would have in New York was at most harmless error as the court found on the admitted evidence that he was a substantial and reliable person; that his home was suitable, and that a normal and healthy environment prevailed. There was no error in refusing to admit appellant's personal diary reflecting the details of her daily life since the court's opinion of January 11, 1956.

For the reasons stated, the decree appealed from is modified to the extent of enlarging the visitation period of the child with appellant and as so modified is affirmed. The case is remanded for the entry of a decree consistent with the views here expressed.

Appellee having substantially prevailed, he will recover his costs in this court as provided for by § 14-178, Code 1950.

*Modified and remanded.*

SPRATLEY, J., concurring in part and dissenting in part.

I find myself unable to agree with that portion of the majority opinion which directs the trial court to modify its decree of December 30, 1957, without the presentation of contemporary evidence

showing that appellant has permanently attained a status of conduct justifying an enlargement of the visitation period of her child. I would affirm the decree in toto, leaving to appellant the opportunity to present in the future her claim to an extension of the period. Code Section 20-108. In doing so we would be following precedent and heeding the facts found by the chancellor.

The final decree of the trial court is presumed to be correct, and the burden is on the appellant to show that it is wrong. Furthermore, the decree is binding upon us unless it is plainly wrong or without evidence to support it. The evidence is in conflict, but that accepted by the chancellor amply supports his conclusions. *Collins* v. *Collins*, 183 Va. 408, 32 S. E. 2d 657; *Phillips* v. *Kiraly*, 200 Va. 345, 105 S. E. 2d 855; *Nix* v. *Nix*, 186 Va. 14, 41 S. E. 2d 345.

There was no appeal from the decree awarding the custody of the child to appellee. The only question presented at the final hearing was whether any permanent change in the conduct of the appellant since June 15, 1956, justified modification of the decree entered on that day. The chancellor had an exceptional opportunity to pass upon the evidence and the weight to be attached thereto. The question whether the mother or father should have the custody of the child has been before the chancellor since 1955. The record in the case consists of more than 750 printed pages of testimony, most of which was heard ore tenus in two periods amounting to seven and a half days.

The chancellor, in the exercise of the discretion allowed him, gave full consideration to the paramount and controlling situation, that is, the welfare of the child. He was in a position to exercise a wiser discretion than the members of this Court. In the exercise of that discretion he found himself unwilling to take the risk of injury to the child. I agree with him that, in consideration of the nature, extent, and duration of the misconduct of appellant, it was a matter of speculation whether or not her reformation was permanent. The risk of injury to the child seems to me far more important than the natural wishes of the mother. It is perfectly clear from the opinion of the chancellor that he will give full, fair, and proper consideration to any future petition of the appellant for the enlargement of the visitation period. A year and a half has elapsed since the last decree, and the mother has full opportunity under the statute to show her present status as a proper person to have partial custody of her child. A proceeding of that nature permits a safe method to avoid speculation and error, and prejudices the rights of no one.

The cases cited in the majority opinion set out the controlling principles, but a casual examination will disclose in each of them a set of facts wholly different from those here, especially in respect to the status of one or the other of the parents involved.