PRESENT:  All the Justices

JEREMY WADE SMITH

                                              OPINION BY
v.  Record No. 121579            JUSTICE WILLIAM C. MIMS
                                              June 6, 2013
COMMONWEALTH OF VIRGINIA

             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Clarence N. Jenkins, Jr., Judge

     In this appeal, we consider whether the retroactive

application of a 2008 amendment to Code § 9.1-902 resulted in

contractual and constitutional violations by allegedly

interfering with a 1999 plea agreement.

          I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     In February 1999, a grand jury in the City of Richmond

indicted Jeremy Wade Smith for rape in violation of Code §

18.2-61.  The indictment alleged that Smith, age twenty-two at

the time, engaged in sexual activity with a fourteen-year-old

girl, resulting in the birth of a child.

     Smith entered into a plea agreement.  He agreed to plead

guilty to the reduced charge of carnal knowledge of a minor in

violation of Code § 18.2-63, and the Commonwealth agreed to

recommend a suspended sentence.  The plea agreement contained

an integration clause stating that it "contain[ed] the entire

agreement between the parties, both oral and written."  The

agreement did not reference the registration requirements

applicable to convicted sex offenders.  The circuit court

reluctantly accepted the plea agreement and sentenced Smith to ten years' incarceration with the entire term suspended. The Commonwealth reminded the court that Smith would be required to register with the Virginia Department of State Police ("State Police") as a sex offender. Smith's counsel indicated that he understood this requirement.

At the time of Smith's conviction, carnal knowledge of a minor was classified as a non-violent sex offense. Former Code § 19.2-298.1 (1995 & Supp. 1999). As a non-violent sex offender, Smith was required to register with the State Police annually for 10 years, after which he could petition for expungement.[1] Former Code §§ 19.2-298.2, -298.3(A) (1995 & Supp. 1999).

In 2006, the federal government enacted the Adam Walsh Child Protection and Safety Act. See 42 U.S.C. § 16911 et seq. (2006). Title I of the Act, known as the Sex Offender Registration & Notification Act ("SORNA"), required Virginia to implement comprehensive sex offender registration standards.[2] In 2008, the General Assembly amended Code § 9.1-902 (former

---

[1] At the time Smith was convicted, the statutory provisions governing sex offender registration were located in former Code §§ 19.2-298.1 through 19.2-298.4 (2000 & Supp. 2002). In 2003, the General Assembly repealed these Code sections and enacted the Sex Offender and Crimes Against Minors Registry Act, Code § 9.1-900 et seq., 2003 Acts ch. 584.

[2] Failure to implement such standards would have resulted in a partial loss of federal funding for state and local law enforcement programs. See 42 U.S.C. § 16925 (2006).

Code § 19.2-298.1) to comply with SORNA. As a result, Smith's conviction for carnal knowledge of a minor was retroactively reclassified as a "sexually violent offense," and he became subject to more stringent registration requirements. 2008 Acts ch. 877. Particularly, Smith now must register every 90 days for the rest of his life, with no right to petition for expungement. Code §§ 9.1-903, -904.

In February 2010, Smith filed a complaint in the Circuit Court of the City of Richmond asserting that he should not be classified as a violent sex offender for purposes of the registration requirements. Smith argued that the reclassification of his offense violated his contractual and constitutional rights. He asserted that the reclassification (1) unilaterally altered the terms of his plea agreement, constituting a breach of contract; (2) deprived him of vested contractual rights without just compensation, constituting an unconstitutional taking; and (3) violated his procedural due process rights.

Smith and the Commonwealth filed cross-motions for summary judgment. Smith claimed that the sex offender registration requirements in effect when he entered the plea agreement were part of the agreement as if they had been explicitly incorporated therein. Thus, he contended that reclassifying his offense breached the plea agreement and deprived him of

3

vested contractual rights without just compensation or due process of law. The Commonwealth responded that Smith had no contractual rights, vested or otherwise, regarding the sex offender registration requirements because the plea agreement contained an integration clause and did not reference the registration requirements.

The circuit court granted summary judgment in favor of the Commonwealth. It held that reclassifying Smith's conviction did not constitute a material breach of contract. In addition, it concluded that the registration requirements were not an integral part of Smith's inducement to enter into the plea agreement, which held no promise or vested right that the registration laws would not subsequently change. Because Smith had no vested contractual rights with respect to the registration requirements, the circuit court reasoned that there was no unconstitutional taking or procedural due process violation.[3] Accordingly, the court dismissed Smith's claims with prejudice. This appeal followed.

## II.  ANALYSIS

The crux of Smith's argument is that the 1999 plea agreement was a contract that incorporated the sex offender

---

[3] Regarding the procedural due process claim, the circuit court also held that a hearing would not have established facts relevant to the legislature's statutory scheme; therefore, no additional process was necessary.

4

registration laws in existence at the time of the agreement. Thus, he contends that the Commonwealth materially breached the plea agreement and deprived him of vested contractual rights by subsequently amending the registration laws and retroactively enforcing them against him.

For Smith to prevail, he first must establish that the 1999 sex offender registration laws became terms of the plea agreement. The plea agreement is silent as to the registration requirements. Thus, Smith's sole argument is that the plea agreement implicitly incorporated the 1999 registration laws as contractual terms by operation of law.

Smith relies on this Court's decision in Wright v. Commonwealth, 275 Va. 77, 655 S.E.2d 7 (2008). In Wright, the defendant entered into a plea agreement that reduced his charge from capital to first degree murder and provided for a sentence of life imprisonment. Id. at 79, 655 S.E.2d at 8. The trial court accepted the plea agreement, but also imposed a statutorily mandated period of post-release supervision and suspended incarceration that was not referenced in the plea agreement. Id. The defendant challenged the trial court's imposition of the additional term, and this Court upheld the sentence. The Court acknowledged that general principles of contract law apply to plea agreements and stated that "[t]he law effective when the contract is made is as much a part of

5

the contract as if incorporated therein." Id. at 81-82, 655 S.E.2d at 10 (internal quotation marks and citations omitted). In other words, the Court concluded that the statute mandating post-release supervision and suspended incarceration was an implicit term of the plea agreement.

Consistent with our decision in Wright, we agree that the 1999 sex offender registration laws were implicit terms of Smith's plea agreement. Thus, as in Wright, Smith could not refuse to abide by the registration requirements simply because they were not expressly listed in the agreement. The question before us is whether the General Assembly could subsequently change the law in effect at the time of the plea agreement.

Smith argues that it could not. He asserts that, for purposes of his plea agreement, the law effective in 1999 also implicitly incorporated Article I, Section 11 of the Constitution of Virginia and Code § 1-239, which together prohibited the Commonwealth from altering contracts via retroactive amendments to the law.[4] Therefore, Smith argues

---

[4] Article I, Section 11 provides that "the General Assembly shall not pass any law impairing the obligations of contracts." Code § 1-239 states:

> No new act of the General Assembly shall be construed to repeal a former law . . . or any right accrued, or claim arising under the former law, or in any way whatever to affect any such . . . right accrued, or claim arising before the new act of the General Assembly takes effect.

6

that the plea agreement not only incorporated the 1999 sex offender registration laws, but gave him a vested right that amended registration laws would not apply to him.

This argument has no merit. It is well established that Article I, Section 11 and Code § 1-239 must be interpreted to accommodate the inherent police power of the state to safeguard the interests of its people. This Court has stated that contracts must be read "as containing an implied condition that [they are] subject to the exercise of the [s]tate's regulatory police power." Haughton v. Lankford, 189 Va. 183, 190, 52 S.E.2d 111, 114 (1949); see also United States Trust Co. v. New Jersey, 431 U.S. 1, 22 (1977). Thus, contracts are deemed to implicitly incorporate the existing law and the reserved power of the state to amend the law or enact additional laws for the public welfare. Haughton, 189 Va. at 190, 52 S.E.2d at 114.

The General Assembly's reclassification of carnal knowledge of a minor as a "sexually violent offense" was an exercise of the state's regulatory police power. Code § 9.1-902 was amended to bring Virginia into compliance with the federal sex offender registration guidelines set forth in SORNA. The rationale behind these federal guidelines was "[t]o protect children from sexual exploitation and violent crime . . . ." Pub. L. No. 109-248, Title I, § 102, 120 Stat. 587, 587, 590 (2006).

Smith argues that amending Code § 9.1-902 was an improper use of the state's police power because the true reason behind the amendment was to avoid the loss of federal funding. We disagree. Regardless of federal funding, Code § 9.1-902 was amended to better protect Virginians against sexually motivated crimes. This purpose is squarely within the Commonwealth's police power to protect the public safety.

Accordingly, the reclassification of Smith's conviction was not a breach of contract. When Smith entered into the plea agreement he had no contractual right that his sex offense would never be subject to future sex offender legislation. While the agreement implicitly incorporated the 1999 registration laws, it said nothing to indicate that Smith would only be bound by the law in effect at the time of the agreement, i.e., the 10-year registration requirement then applicable to non-violent sex offenders.[5] Furthermore, the plea agreement contained an implied condition that Smith would remain subject to the state's future exercise of its police power. That power included the inherent authority to pass non-punitive legislation regulating convicted sex offenders.

Because we find that Smith had no vested contractual rights with respect to the 1999 registration requirements, his

_____

[5] We do not at this time address whether the reclassification of a conviction would constitute a breach of any such express contractual clause.

8

constitutional claims also must fail. Smith first argues that the Commonwealth violated Article I, Section 11 of the Constitution of Virginia by depriving him of his contractual rights under the plea agreement without just compensation. Article I, Section 11 states:

> [T]he General Assembly shall pass no law whereby private property, the right to which is fundamental, shall be damaged or taken except for public use. No private property shall be damaged or taken for public use without just compensation to the owner thereof.

Smith is correct that vested contractual rights qualify as private property that may not be taken without just compensation. See Lynch v. United States, 292 U.S. 571, 579 (1934). However, as discussed, Smith did not have any vested contractual rights with respect to the 1999 registration requirements. The Commonwealth was permitted to enact retroactive legislation regulating convicted sex offenders as part of its police power. Thus, the reclassification of Smith's conviction was not an unconstitutional taking.

Smith also argues that his procedural due process rights were violated because he was deprived of contractual rights without an opportunity to be heard. Article I, Section 11 of the Constitution of Virginia provides that, "no person shall be deprived of his life, liberty, or property without due process of law." "[D]ue process of law requires that a person shall have reasonable notice and a reasonable opportunity to be heard

before an impartial tribunal, before any binding decree can be passed affecting his right to liberty or property." Ward Lumber Co. v. Henderson-White Mfg. Co., 107 Va. 626, 630, 59 S.E. 476, 479 (1907) (internal quotation marks omitted).

For the same reason that the reclassification of Smith's conviction was not an unconstitutional taking, it also was not a violation of procedural due process. Due process analysis presupposes the existence of an enforceable right. We previously have held that convicted sex offenders have no liberty interest to be free from quarterly registration requirements. McCabe v. Commonwealth, 274 Va. 558, 565, 650 S.E.2d 508, 512 (2007). Likewise, they have no fundamental right to rely on the civil legislative scheme in existence at the time of pleading guilty. Id. at 565-66, 650 S.E.2d at 512-13. Because in this particular case Smith had no vested contractual rights with respect to the 1999 registration requirements, there was no procedural due process violation.[6]

---

[6] Even if Smith did have contractual rights with respect to the 1999 registration requirements, no additional process was necessary. Classification of a crime as a "sexually violent offense" under Code § 9.1-902 is based solely on the nature of the crime. Thus, conviction of carnal knowledge of a minor who was more than five years younger than the perpetrator is the only fact relevant to the classification determination, and nothing Smith could have presented at a hearing would have changed that fact. See McCabe, 274 Va. at 567-68, 650 S.E.2d at 513-14.

III. CONCLUSION

Since there were no contractual or constitutional violations resulting from the reclassification of Smith's conviction, the circuit court properly dismissed his petition for expungement and for a permanent injunction. Accordingly, we will affirm the judgment of the circuit court.

Affirmed.