# Staunton

### FLORENCE HASTINGS GEYER ANDREWS v. JOSEPH B. GEYER.

September 10, 1958.

Record No. 4811.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Easley & Vaughan,* on brief, for the appellant.

*William M. Blackwell* and *F. C. Bedinger, Sr.* (*Garland M. Harwood, Jr.; Bedinger & Bedinger; Shewmake, Gary, Goddin & Blackwell,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

■ We granted Florence Hastings Geyer Andrews an appeal from a decree entered on April 8, 1957, in the Circuit Court of Charlotte County awarding exclusive custody of her infant son, Joseph B. Geyer, Jr., to his father. The decree was entered after a hearing on a petition seeking to obtain exclusive custody of the child, filed by the mother under § 20-107, Code of Virginia, 1950, in the Circuit Court of Mecklenburg County in an ended divorce proceeding between the parties.

On June 10, 1954, Joseph B. Geyer instituted a suit for divorce against Florence Hastings Geyer (now Mrs. Andrews) on the ground of desertion, alleging that she had deserted him on September 2, 1953. Mrs. Geyer filed an answer and cross-bill asking for a divorce on the ground of cruelty, to which an answer was filed denying the allegation. This resulted in the entry of a decree on December 23, 1954, in which a divorce *a mensa et thoro* was awarded the husband on the ground of desertion. The decree of divorce embodied the following stipulation and agreement between the parties:

"1. The complainant will be given custody of their child subject to the right of the mother:

"A. To see the child at all reasonable times.

"B. To have the child visit her at her home [in Massachusetts] during either the Easter holiday or the Christmas holiday of each school year with the understanding that the visits will alternate so that they will be on Easter during one school year and on Christmas during the next school year, etc., and with the understanding that the visits shall extend substantially over the school holiday. * * *

"C. To have the child visit her at her home from June 18 to August 18 of each year.

"2. The responsibility for the transportation of the child to and from the complainant's home shall be borne equally by the parties to said suit.

"3. The complainant shall have the right to visit the child at all reasonable times while the child is with its mother. * * *"

The decree further provided that Geyer pay his wife the sum of $2500 as a property settlement, together with suit money and counsel fees.

On the date of the entry of this decree, another decree was entered merging the divorce *a mensa* into a divorce from the bonds of matrimony, which latter decree reaffirmed the custodial agreement.

The terms of the decree were fully complied with and apparently had worked satisfactorily until the aforesaid petition seeking exclusive custody was filed by the mother on January 10, 1957.

The petition filed by Mrs. Geyer, who in the meantime had married Dr. Henry B. Andrews, Jr., a dentist living in Pembroke, Massachusetts, alleged that the remarriage of her former husband, Joseph B. Geyer, in July, 1955, had created a situation in the Geyer home to which the infant son should not be subjected. The petition prayed that Mrs. Andrews be awarded temporary custody of her son and that at the proper time the court determine the permanent custody. To this petition Geyer filed an answer admitting his marriage but denying the existence of any improper situation in the home. He prayed that the petition be denied and that the custody of the child as provided in the divorce decree be continued.

After the filing of the aforementioned pleadings, Judge Mitchell who had granted the original decrees of divorce, disqualified himself and the case was transferred from the Circuit Court of Mecklenburg County to the Circuit Court of Charlotte County, which court was presided over by Judge Flood.

The case came on to be heard on the petition, the answer, certain depositions taken on behalf of the mother, and evidence taken *ore tenus*. After the hearing the court filed a written opinion and entered the decree from which this appeal is taken. The decree placed the custody of the infant, Joseph B. Geyer, Jr., with the father, subject to the right of the mother to visit him at all reasonable times at the Geyer home.

The assignments of error present the questions:

1. Did the court err in not awarding custody of the infant to his mother?; and

2. Did the court err in denying to the mother the custodial rights theretofore granted her in the decree of divorce?

The material findings set out in the court's opinion are in part as follows:

"The testimony of the witnesses in this case on both sides, with

the exception of the present Mrs. Geyer, impressed me favorably. They appeared to be persons of education, intelligence and culture who were telling the truth."

The opinion then related the Judge's interview with the nine-year-old infant and stated that after gaining the confidence of the child and putting him at ease:

"Then I asked him if he liked the way things were arranged by which he spent two months each summer, every other Christmas holiday, a week every other Easter with his mother, and the rest of the year with his father. He said he did, that he loved both his father and his mother very much. * * *

"After my conversation with Jodie I asked attorneys to meet with me in chambers. I told them I had decided to follow Judge Mitchell's holdings * * *. Mrs. Andrews' attorneys informed me that they intended to appeal my decision, and for the purpose of the record they wished Mrs. Patricia Geyer [Geyer's present wife] to testify. * * * (A)fter the completion of her testimony court was adjourned."

The opinion continued:

"A week or ten days after the hearing * * * but before a decree had been presented to me carrying into effect my decision * * * I reached the conclusion that it would be to the best interest of little Jodie for his father to be awarded his entire custody subject, of course, to visitations by his mother, Mrs. Andrews, which will appear from a decree I have entered [the decree appealed from]. I did this for the following reasons:

"First, because the action of Mrs. Andrews in calling the present Mrs. Geyer to the stand, in my opinion, could have but two effects,

"a. To embarrass and injure Mr. Geyer in Mecklenburg County, where he has been successfully practicing law for about ten years, and

"b. To widen a breach between him and his present wife to the extent that they will probably never live together again. This showed me the vindictive nature of Mrs. Andrews, which had not appeared in the evidence until that time; and

"Second, because after maturely thinking over the evidence in the case I became convinced that Jodie's best interest would be furthered if his trips to visit his mother in Massachusetts should cease. The evidence clearly showed that on returns from these trips he would be nervously upset, and I believe if they continued his mother would try to alienate him from his father. I have observed

instances of this kind not only since I have been on the bench, but while I was practicing law. Partial partition of time between parents did not usually work out at all well.

; "This brings me to the real gist of the case. Should the custody and control of Jodie Geyer be permanently awarded to his father or to his mother? The criterion is the child's best interest. He would probably have a good comfortable home if he lived with either of them, but this is not all that a court should consider in determining the best interest of a child. I have never been more favorably impressed with a 9½-year old child than I was with this little fellow. In my brief interview with him I observed that he was polite, well mannered, and unusually bright."

The opinion then goes on to recite the evidence of numerous witnesses living in Chase City, introduced on behalf of Joseph B. Geyer, all of which evidence is flatteringly favorable and clearly demonstrates that he has reared his son in excellent surroundings and has given him every attention possible for his proper development. The recited testimony shows that Geyer is a deacon in the Presbyterian Church, was a former mayor of the town, and that he is, popular and bears an excellent reputation.

The only suggested blot on Geyer's character is the circumstance regarding his marriage to Miss Higgins, the present Mrs. Geyer. It would serve no useful purposes to relate this as the lady has not lived in Chase City since the marriage and has in no way come in contact with the child.

The evidence relating to Mrs. Andrews is to the effect that the child is well cared for when on visits to her home. The criticism directed to the mother is that she deserted her husband and child as determined in the divorce proceeding, and that she, in the opinion of the judge, went too far in an effort to secure the custody of her son "in calling the present Mrs. Geyer to the stand."  ' ˌ

The awarding of the care and custody of children involves a most perplexing question. It is indeed rare when a court can be positive, at the time, that its award will prove to be for the best interest of the child, which is the paramount question. The uncertainty involved is the reason for § 20-107; Code of Virginia 1950, which empowers the court to alter or change the custody of children, viewed in the light of subsequent events. Relief under this statute remains within the court's jurisdiction throughout the infancy of the child involved,

and affords a degree of comfort to a court having the heavy responsibility of determining custody.

In our view of the case the custody of this child, now eleven years of age, should have been left as determined by Judge Mitchell in the original divorce proceeding. Clearly, Mrs. Andrews utterly failed to show that there had been such a change in condition as would warrant the court in giving her the sole custody of her son. She had abandoned her husband and child in the first instance, and the decree of divorce was based on this abandonment. She was found to be the guilty party and had agreed to the custody provisions outlined in the decree.

It will be remembered that the court, after the hearing on the petition, decided not to disturb the custody provisions in the divorce decree. It was only after the second Mrs. Geyer testified that he changed his decision. The change was based on the reasoning that Mrs. Andrews had displayed a "vindictive nature" in calling the second Mrs. Geyer as a witness. In our view, Mrs. Andrews can hardly be charged with this procedure. She was represented by able counsel who had been engaged for the purpose of securing the exclusive custody of the child. The attorneys and not Mrs. Andrews directed the proceeding and determined what witnesses should be called to testify. So the vindictiveness, if any there was, could not properly be charged to the mother.

The court further observed that the evidence disclosed that "Jodie" was "nervously upset" when he returned from visits to his mother. This, we think, is a natural reaction in a child unfortunately torn between two loves. These visits have continued for several years—since the child was five years of age—and the 'nervous upsets' will in all probability lessen and perhaps cease as the child grows older. In any event, such 'upsets' could hardly outweigh the love which the child has definitely manifested for both parents. This should not be denied him.

The court next observed that in his experience "partial partition of time between parents did not usually work out at all well." It can hardly be said that this experience has been the rule in this or other jurisdictions. The books are filled with 'broken home' cases in which children are involved. 17A Am. Jur., Divorce and Separation, § 823, p. 18. These children are innocent victims of circumstances over which they have no control. At least they are

entitled to the companionship and love of each parent if available. There is proof positive that such love is available in this instance.

Mr. Justice Spratley, speaking for the court on the question of 'divided custody' in the case of *Mullen* v. *Mullen*, 188 Va. 259, 272, 273 (headnote 9), 49 S. E. 2d 349, 355, had this to say:

"The advisability of dividing or alternating the custody of the child has been seriously considered. While there are certain disadvantages in such division, there are also important advantages and benefits. It gives the child the experience of two separate homes. The child is entitled to the love, advice, and training of both her father and her mother. Frequent associations, contact, and friendly relations with both of her parents will protect her future welfare if one of her parents should die. It gives recognition to the rights of parents who have performed obligations as parents."

As aforesaid, the custodial arrangement provided in the divorce decree was working well until Mrs. Andrews filed her petition for exclusive custody. The basis for this petition has been correctly determined to be unfounded. The penalty of failure to maintain the petition would be too great if the mother were denied partial custody of her child, and, under the related circumstances, the child should not be required to suffer this result.

For the reasons stated, so much of the decree appealed from as awards exclusive custody and control to the father is reversed, and the case is remanded with directions that a decree be entered in conformity with the views here expressed.

The appellee having substantially prevailed, he will recover his costs in this court. Code, § 14-178; Burks Pleading and Practice, 4th Ed., § 437, page 857.

*Reversed and remanded.*