**Salem**

ROGER LEE TURNER

v.

ANITA MARIE WHITMIRE TURNER

a/k/a ANITA MARIE PEREGORY

No. 1311-85

Decided September 2, 1986

COUNSEL

Harry A. Bosen, Jr., for appellant.

Melissa E. Kane (Lawrence & Lumsden, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — In this child custody case, the trial court granted a petition to transfer custody of a minor child from her father to her mother. The father raises two issues in this appeal: (1) whether there was a material change in circumstances so that the best interests of the child dictated that custody be transferred from the father to the mother, and (2) whether the trial court erred in allowing the mother to introduce evidence of circum-

stances which existed before the prior custody decrees. Finding no error, we affirm.

Roger and Anita Turner were divorced by a decree entered in the Circuit Court of Roanoke County on March 5, 1984, on the ground of a one year separation. Pursuant to a consent decree entered on February 3, 1983, custody of the child was granted to Anita. Subsequent to the divorce decree, custody investigations by the local department of social services were ordered, *ore tenus* hearings were held and by decrees entered on June 20, 1984, and January 10, 1985, custody was granted to Roger with visitation rights granted to Anita. On May 23, 1985, Anita again petitioned for custody. Another custody investigation was made by the local department of social services, psychological reports were obtained from three mental health professionals, *ore tenus* hearings were held and on October 1, 1985, the trial court granted custody to Anita. Roger appeals from that decree.

We first address the second issue raised by Roger in this appeal. In the prior hearings concerning custody, a different trial judge heard the evidence. The record clearly reflects that the trial judge concerned with Anita's last petition permitted her to present evidence of facts which were considered in the prior proceedings. This was done specifically as stated in the record to permit the trial judge to have some background information, "so I could understand the case better and could understand what the change of condition would be because if I didn't know what the condition was originally how was I going to know what the condition has changed to."

█ It is not contested that the trial courts retain jurisdiction to alter custody decrees under changed conditions to insure the best interests of children. Code § 20-108. Regrettably, because of the volume of these cases, it is not always practical or even possible for the same trial judge to preside over a case until a child reaches his or her majority and petitions for change in custody are rendered moot. For that reason, where a different trial judge is called upon to consider the evidence in support of and in opposition to a subsequent custody petition, consideration of evidence which establishes background information and permits the trial judge to understand the alleged change in circumstances is permissible. Such evidence, however, is not to be used to retry the issues resolved in the prior proceedings. Here that was not done, and ac-

cordingly, we find no error.

■ We now address the first issue as stated by the father of whether there was a material change in circumstances so that the best interests of the child "dictated" that custody be transferred from the father to the mother. More accurately stated: "The test that should have been applied has two prongs: first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children." *Keel v. Keel*, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983). Roger argues that neither prong of the *Keel* test was met by Anita. On familiar principles we review the evidence in the light most favorable to Anita as the prevailing party below. *See generally Simmons v. Simmons*, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986); *Box v. Talley*, 1 Va. App. 289, 293, 338 S.E.2d 349, 351 (1986).

Anita's last petition for custody filed on May 23, 1985, alleged that she had remarried and this would give the child an "improved home situation." She further alleged that the child was unhappy and depressed having to live with Roger, that the father was not giving the child the care that she needs, that Roger does not maintain the necessary contact with the child's school, and finally, that "the father's ideas and philosophy are contrary to the proper rearing of a modern child." At trial and in her brief in this appeal, Anita abandoned some of these general allegations and primarily relied on evidence to establish that her marriage had stabilized, that the child had become more withdrawn since being with the father, that the child had stated a preference to live with her, and that two of the three psychologists recommend placement of the child with her.

We note at the outset of our review of the record to determine whether a "change in circumstances" referred to in the first prong of the *Keel* test had occurred, that the record clearly supports the finding of the trial judge that the child is of above average intelligence and is well cared for while in the custody of both parents. Neither parent is unfit or unwilling to properly care for the child. Roger maintains, therefore, that no change has occurred to support the granting of a change in custody. He reasons that Anita had remarried at the time of a prior hearing in which her petition was denied, that the child's stated preference to live with Anita is the result of "manipulating" by Anita, and that the psy-

chological reports do not justify a change. More specifically, and in conflict with his stated position that the circumstances existing prior to the last petition should not be considered in the present proceeding, he alleges that after the separation and prior to the final divorce decree Anita had an affair with her present husband. He argues that their affair resulted in the denial of custody to her and that her remarriage cannot be used as a basis for a change in custody now. That allegation was not considered by the trial court and we decline to consider it now.

We are well aware of and confirm the reasons for giving stability to parents and children by declining to alter prior custody decrees without a showing of a material change in circumstances. It is clearly not in the best interests of children in these unfortunate circumstances to encourage repeated petitions for custody by noncustodial parents. However, as expressed by the Supreme Court in *Andrews v. Geyer*, 200 Va. 107, 111, 104 S.E.2d 747, 750-51 (1958):

It is indeed rare when a court can be positive, at the time, that its award will prove to be for the best interest of the child, which is the paramount question. The uncertainty involved is the reason for § 20-107, Code of Virginia 1950, which empowers the court to alter or change the custody of children, viewed in the light of subsequent events.

Where, as here, the noncustodial parent can show that a remarriage has stabilized, that the child has undergone changes and has expressed a preference in living with the noncustodial parent, the first prong of the *Keel* test has been met. Whether the second prong of that test has been met, however, involves more careful review.

We turn now to that review to address the issue of whether the change in custody to Anita would be in the best interests of the child as determined by the trial judge. This is conceded to be the most important part of the two-prong test. *Keel*, 225 Va. at 612, 303 S.E.2d at 921. Unquestionably, it is also the most difficult for any trial judge as well as any appellate court on review. As stated in *Keel*: "[T]here is no simple, mechanical, 'cut and dried' way to determine whether a change in custody will be in the best interests of children. Yet, the trial court is bound to consider evidence sufficient to allow it to make a rational comparison

between the circumstances of the two parents as those circumstances affect the children." *Id.* at 613, 303 S.E.2d at 922. Making such a comparison requires an analysis to determine which parent is best qualified to provide the highest quality of care to the child and which home will provide the child the greatest opportunity to fulfill his or her potential.

In the final analysis, so long as the proper standard is followed to protect the interests of the parents, the trial court must recognize that all children are unique to some degree and that the circumstances of their divorced parents are unique to some degree. Consequently, the court must resolve a custody proceeding with its paramount concern being the best interests of the child at a given point in time, recognizing that it may become appropriate to make a change in the future.

In the present case at the time of the hearing in question, the child was an eight year old female with above average intelligence. She had experienced living in the homes of both parents and expressed a preference to live with her mother. Her teacher indicated that she had become more withdrawn since living with her father. One psychologist, upon a referral by Roger, found that there was not a distinct difference in her relationship with either parent but that there was going to be a struggle in those relationships. This psychologist noted that she did show a personality style in which she was moving toward more acting out and defiant behavior and that consequently she would need a great deal of consistency, stability, and fairness so that she would not inappropriately get the upper hand. Another psychologist, upon referral by Anita, found that the child had been depressed since living with her father and that she was very tied into her relationship with her mother. The psychologist further noted this relationship was certainly the most significant in her life and was much more significant than her relationship with her father. This psychologist recommended placement with Anita. Yet another psychologist, upon referral by the court, while complimentary to both parents recommended placement with Anita. This psychologist reviewed prior psychological tests, interviewed both parents and the child, and administered certain psychological tests on the child. The recommendation was based, at least in part, on the conclusions that the mother had tested higher in "competency" and "supportiveness," the child's perception that the mother was more patient

with her, and the conclusion that she was more comfortable in discussing certain topics with her mother.

Based on this evidence, the trial court, expressly applying the *Keel* test, found that it was in the best interests of the child to transfer her custody to Anita with liberal visitation rights granted to Roger. The record supports that determination. In this particular case, where the parents are both fit, both loving, both able to provide shelter and the ordinary needs of the child, what is unique and what justifies the transfer is the desire of this child to live with her mother and her psychological need to do so. Where factual situations present clear unfitness, danger to a child, unwillingness to parent, abandonment of a child and other gross conduct, the application of the *Keel* test may not be difficult. We perceive, however, that the difficulty of its application so frequently described pertains to cases such as this one where the trial court must focus on the uniqueness involved and make its determination fully aware that the future may prove that determination right or wrong.

We note that Roger argues in this appeal that as an unmarried custodial parent he has been placed in an unfair position by the trial court's reliance on the remarriage of Anita and that all single parents are at an inherent disadvantage in such cases. Such is certainly not the law or the result in this case. A remarriage of a noncustodial parent in a particular case could be a negative as well as a positive factor in determining the best interests of a child. To conclude otherwise would be to attempt to apply just such a mechanical rule that Justice Thomas so appropriately condemned in *Keel*. The wisdom of granting broad latitude to the trial judge in determining the best interests of children in custody disputes is that by so doing the interests of children are truly protected by the courts.

For the reasons stated, the decree of the trial court will be affirmed.

*Affirmed.*

Benton, J., concurred.

Duff, J., dissenting.

I cannot join the majority opinion because my view of the case fails to show a sufficient material change of circumstances that would justify changing the custody of the child.

Since May 25, 1984, there have been three contested evidentiary hearings regarding custody. After the first, the court specifically found that it was in the best interests of the child that custody be with the father. Accordingly, a decree was entered on June 20, 1984. On August 1, 1984, the mother filed a notice for review and change of custody. After an *ore tenus* hearing on November 5, 1984, a decree was entered on January 10, 1985, finding no material change in circumstances and continuing custody with the father.

On May 23, 1985, another petition for change of custody was filed by the mother and a hearing was held on September 11, 1985. The decree emanating from this last hearing was entered October 1, 1985, and ordered that custody be changed from the father to the mother.

The primary bases for the change of condition alleged by the mother are: (1) that she had remarried and her marriage had stabilized; (2) that the child had become more withdrawn since being with her father and had expressed a preference to live with her mother; and (3) that two of the psychologists whose reports were considered recommended placement with the mother. There is no claim that the father is in any way an unfit parent. The record reveals that the child is well mannered, well groomed, well adjusted, doing well in school and progressing well emotionally. In short, the father was doing a good job as the custodial parent. A complete social service investigation was ordered prior to each evidentiary hearing. The last such report found no material change in circumstances and suggested that custody be continued with the father.

The fact of Anita's remarriage existed at the time of the second hearing. Less than five months after that decree was entered, however, the mother's marriage had allegedly "stabilized," and this was asserted as a material change in condition supporting a change in custody. Conceding for the sake of argument that remarriage is an appropriate change in condition, the short lapse of time since the court awarded custody to the father seriously dilutes the weight that I believe should have been given to this

claim.

The record further reflects that in earlier investigations, the child expressed a desire to live with her father but that she has now changed her mind and wants to live with her mother. The last report from the Department of Social Services dated June 17, 1985, stated that the mother was manipulating the child to get the child to want to live with her. Whether this is true or not, it emphasizes the risks inherent in placing undue weight on the transitory wishes of a child of this young age. This is particularly true in the absence of evidence of neglect by the custodial parent.

The psychological report of Dr. Gray tendered by the mother at trial was based upon one visit with the child. Dr. Gray had no testing data, only handwritten notes upon which the report was based. Dr. Loganbill found that both parents were fit, that they were providing the child supportive, nurturing parenting, and that the child had a healthy bond with each parent. The child's expressed preference for living with her mother was because she got to do "exciting things" with the mother, while the best thing that she stated about living with her father was: "He plays with me."

I am unable to find in the record sufficient evidence to support the conclusion that there was a change of circumstances and conditions warranting a reversal of the two adjudications made within the preceding sixteen months, that the custody of this child should be with her father. I would reverse the decree from which this appeal was taken.