COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Friedman
Argued by videoconference

THERESA JEAN WIZIARDE

                                             MEMORANDUM OPINION[*] BY
v.      Record No. 0402-21-2          JUDGE MARY BENNETT MALVEAUX
                                                 FEBRUARY 8, 2022

ANTHONY MAURICE WARREN

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Henry W. McLaughlin (Law Office of Henry McLaughlin, P.C., on
briefs), for appellant.

Erik D. Baines (Brian C. Dent, Guardian *ad litem* for the minor child;
Barnes & Diehl, P.C., on brief), for appellee.


Theresa Jean Wiziarde ("mother") appeals an order entered by the City of Richmond Circuit

Court ("circuit court") dismissing her motion to amend a visitation order. On appeal, mother argues

that the circuit court erred in: (1) ruling that Anthony Maurice Warren's ("father") testimony in the

juvenile and domestic relations district court ("JDR court") was not relevant because it was material

to his credibility; (2) refusing to admit exhibits which tended to prove prior violence by father;

(3) leaving in place the JDR order in the *de novo* appeal of that order, but not finding that father

proved a change in circumstances supporting his increased visitation; and (4) denying her motion

for reconsideration. For the following reasons, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

# I. BACKGROUND[1]

"On appeal, we view the evidence in the light most favorable to [father], the party prevailing below." *D'Ambrosio v. D'Ambrosio*, 45 Va. App. 323, 335 (2005).

On September 11, 2014, mother and father signed a custody and visitation agreement regarding their daughter, L.W. The agreement provided that mother would have physical custody of L.W. while the parties would share legal custody of the child. It also provided that father would have visitation Tuesday, Wednesday, and Thursday from noon to 6:00 p.m. This agreement was entered as an order of the JDR court on September 22, 2014.

Following the entry of this order, for the remainder of 2014 through 2017, the parties filed a variety of motions relating to custody and visitation in the JDR court. On September 14, 2017, the circuit court held a hearing on father's motion to amend the September 22, 2014 JDR court order. At the hearing, father moved to nonsuit his motion to amend. The circuit court granted father's motion to nonsuit and reinstated the September 22, 2014 JDR order, and then remanded the matter to the JDR court.

On January 3, 2018, father filed a motion to amend custody in the JDR court, requesting joint physical custody of L.W. On November 28, 2018, mother filed a motion to amend visitation, asking the court to modify the September 22, 2014 JDR order to allow only supervised visitation with father. On April 24, 2019, the JDR court held a hearing and entered an order ("April 2019 JDR order") ordering that the parties' current visitation order would remain in place.

---

[1] This opinion uses abbreviations for the children's names to protect their privacy. Additionally, the record in this case was sealed. To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. *See Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017) ("To the extent that this [Court] mentions facts found in the sealed record, [it] unseal[s] only those specific facts, finding them relevant to the decision in th[e] case.").

On May 1, 2019, father filed two motions in the JDR court to amend the April 2019 JDR order, one addressing custody and one addressing visitation. In his motions, father requested that he be awarded sole physical custody of L.W. and that L.W. live with him at his residence with "reasonable" visitation for mother.

On June 30, 2020, mother likewise filed motions in the JDR court to amend the April 2019 JDR order, one to modify visitation and one to modify custody. Mother asked the court to either maintain the current custody arrangement or grant her sole physical and legal custody. Mother also requested that the court require that father only have supervised visitation with L.W.

On August 20, 2020, the JDR court entered several orders regarding the parties' motions ("August 2020 JDR orders"). First, the court entered orders denying mother's motions to amend visitation and custody. Second, the court entered an order, referencing the case numbers for father's motions to amend custody and visitation, that did not modify the parties' custody arrangement and left mother with physical custody and both parties with joint legal custody. However, the court did modify the parties' visitation schedule in this order. The order awarded father increased visitation from the April 2019 JDR order, granting him overnight visitation from Monday morning at 8:00 a.m. to Wednesday morning at 8:00 a.m. every other week.

On August 28, 2020, mother filed notices of appeal from all four of the August 2020 JDR court orders—the orders denying mother's and father's motions to amend custody, denying mother's motion to amend visitation, and granting father's motion to amend visitation.

On March 22, 2021, the circuit court held a hearing on mother's appeals. At the beginning of the hearing, the circuit court asked the parties whether mother's motion for supervised visitation was "the only issue on the table here today," and counsel for mother affirmed that the court was correct in that assertion.

Mother then informed the court that she wanted to introduce exhibits concerning incidents that occurred prior to the April 2019 JDR order. The court stated that it would not admit that evidence as its "role [wa]s to take the order that was entered in April of 2019 and determine if there were any change in circumstances," but noted that it would allow mother to proffer the evidence at the end of the hearing.

Mother then presented evidence, first calling father to testify. He stated that on June 25, 2020, he and his son, D.W.,[2] carried a mattress across the street to an elderly neighbor's home. Father testified that he had asked L.W. if she wanted to walk across the street with them or stay behind and watch a movie and that she had wanted to stay to watch the movie. Father then left L.W. alone at his house. He testified that he had left L.W. "alone for a few minutes" and denied leaving her alone for an hour. While he was moving the mattress, L.W. became scared. She went to father's front porch, crying and upset, when a neighbor saw L.W. and brought her over to father.

Mother then called D.W. to testify. D.W. stated that the mattress had been too big to get into the neighbor's house, so they had "stayed there for little over an hour just trying to get the mattress in" while L.W. had been left alone that entire time. He later stated that it had been "[a]t the very least, an hour. Felt like maybe an hour." D.W. also testified that father had not asked L.W. if she wanted to come along with them. He noted that father's house was located on a narrow one-way street. On cross-examination, he admitted that he did not remember what exact time he had left with father that day and did not remember what time they had returned.

---

[2] D.W., father's son from another relationship, was sixteen years old at the time of the hearing. At the hearing, father described his relationship with D.W. as "adversarial."

After father and D.W. testified, mother rested her case. The court then asked father if he had any evidence, and he stated that he had no witnesses or exhibits. The court responded, "No problem."

During argument, mother contended that a material change in circumstances had occurred since the entry of the April 2019 JDR order due to father's leaving L.W. alone for an hour and then later denying it. Mother asserted that this act demonstrated father's poor parenting skills and his inability to take responsibility for his actions. Mother asked the circuit court to allow father only supervised visitation with no overnight visitation.

The court ruled that it did not find a material change in circumstances. In making its ruling, the court found that father had made a mistake in leaving L.W. However, it did not conclude that L.W. was actually left alone for an entire hour, noting that D.W.'s testimony had "changed slightly" regarding how long they were at the neighbor's house. Further, D.W. had not been able to remember at what time they had left or returned home. After finding no material change in circumstances, the court stated, "[t]hen it just stays the same as it was in lower court. So the custody and visitation remains the same."

Following its ruling, the circuit court allowed mother to proffer her evidence regarding incidents that occurred prior to the April 2019 JDR order. Counsel for mother proffered exhibits involving events that predated April 2019, stating that "[t]he contention is that leaving the child alone . . . comes in the context of prior problems, including violence on [father's] part, including violence against the mother."

On March 22, 2021, the circuit court entered an order reflecting its rulings made in court. In this order, the court found that there had not been a material change in circumstances, and thus "[m]other's request to amend the JDR Court's August 20, 2020 custody/visitation Order is hereby denied."

On March 30, 2021, mother filed a motion to reconsider. On April 6, 2021, the circuit court entered an order denying mother's motion for reconsideration.

Mother now appeals the circuit court's decision.

## II. ANALYSIS

### A. Failure to Establish a Material Change in Circumstances[3]

On appeal, mother argues that the circuit court erred in upholding the August 2020 JDR orders because father did not present evidence as to a change in circumstances during the hearing on her appeals of the August 2020 JDR orders. Mother asserts that because the circuit court hearing was *de novo*, the issues before the court should have included whether there was evidence that a change of circumstances occurred after the entry of the April 2019 JDR order to allow the court to award increased visitation for father.

Code § 16.1-296(A) provides, in pertinent part, "From any final order or judgment of the juvenile court . . . an appeal may be taken to the circuit court within 10 days from the entry of a final judgment, order or conviction and shall be heard de novo." "A court which hears a case *de novo* . . . acts not as a court of appeals but as one exercising original jurisdiction." *Addison v. Salyer*, 185 Va. 644, 650 (1946) (quoting *Gemmell, Inc. v. Svea Fire, etc., Ins. Co.*, 166 Va. 95, 98 (1936)). "A trial *de novo* in the circuit court 'annuls the judgment of the [juvenile court] as completely as if there had been no previous trial . . . and . . . grants to a litigant every advantage which would have been [available to the litigant] had the case been tried originally in [the circuit] court.'" *Alexander v. Flowers*, 51 Va. App. 404, 413 (2008) (quoting *Fairfax Cnty. Dep't of Family Servs. v. D.N. and S.N.*, 29 Va. App. 400, 406 (1999)) (alterations in original). "Once the trial *de novo* commences in the circuit court, the district court *judgment* is annulled, *and is not thereafter available for any purpose*." *Id.* at 414 (quoting *Turner v. Commonwealth*,

---

[3] This section of the opinion addresses mother's third assignment of error.

- 6 -

49 Va. App. 381, 386 (2007)). "Such an appeal transfers the *entire* record to the circuit court for retrial *as though the case had been originally brought there*." *Mahoney v. Mahoney*, 34 Va. App. 63, 66 (2000) (*en banc*).

"When a party has filed a petition to modify an existing visitation order, the courts must apply the Supreme Court's two-pronged test enunciated in *Keel v. Keel*, 225 Va. 606 (1983), to determine whether modification of that order is proper." *Rhodes v. Lang*, 66 Va. App. 702, 709 (2016). "That test asks, 'first, has there been a change in circumstances since the most recent custody [or visitation] award; second, would a change in custody [or visitation] be in the best interests of the children.'" *Id.* (quoting *Keel*, 225 Va. at 611).

Although mother argues that the circuit court erred in upholding the JDR order granting father increased visitation when he did not present evidence as to a change in circumstances during the *de novo* circuit court hearing, we conclude that we cannot reach this issue on appeal. Instead, we find that mother waived any argument as to the lack of evidence supporting father's increased visitation when she herself limited the court's consideration to a single issue— specifically, the JDR court's denial of *her* motion to amend visitation.

In the instant case, mother and father both filed motions in the JDR court to amend the custody and visitation orders. The JDR court issued rulings on each of these four motions in its August 2020 JDR orders. Mother subsequently filed four separate notices of appeal from the August 2020 JDR orders, noticing appeals on both parties' motions to amend custody and visitation. At the outset of the circuit court hearing on mother's appeals, the following exchange occurred between the court, counsel for mother, and the GAL:

> THE COURT: So is it my understanding that the issue is supervised visitation only, that the juvenile order denied her motion to amend, which was to ask for supervised visitation? Is that the only issue on the table here today?

- 7 -

[COUNSEL FOR MOTHER]:  She has appealed from the denial
of her request that visitation be supervised.

THE COURT:  Right.  So that is the only issue we are dealing with
is supervised visitation.

[COUNSEL FOR MOTHER]:  I believe so.

THE COURT:  Okay.

[GAL]:  That's my understanding, Your Honor.

THE COURT:  Do you want to call your first witness?

[COUNSEL FOR MOTHER]:  I would, Your Honor.  Technically,
[father] filed a motion that came before the Court.  I would agree
that I think it makes more sense for me to go forward.

This exchange shows the circuit court's attempt to clarify which rulings from the JDR court mother was appealing.  After the court asked whether it was correct in understanding that mother was appealing solely the denial of her motion to amend visitation, counsel for mother responded that she had "appealed from the denial of her request that visitation be supervised."  When the court then specifically asked whether the "only issue we are dealing with is supervised visitation," counsel for mother responded that he "believe[d] so."  While counsel for mother did note that "[t]echnically, [father] filed a motion that came before the [c]ourt," counsel did not inform the circuit court that mother had appealed any of father's motions from the JDR court.  Instead, this exchange, viewed in its totality, demonstrates that counsel for mother led the court to believe that the only motion before it was the denial of mother's motion for supervised visitation for father.[4]

_____

[4] Later in the hearing, the court again attempted to ascertain which orders were at issue before it and asked about the JDR order granting in part and denying in part father's motions related to custody and visitation.  After an exchange with the GAL, father, and counsel for mother about father's motions before the JDR court, the circuit court stated that it had found mother's motion for supervised visitation and had "just wanted to make sure we were on the same page."  At no point during this questioning by the circuit court did counsel for mother inform the court that mother was also appealing the JDR court order granting father's motion for

Here, mother was the party appealing the orders from the JDR court to the circuit court. As the party appealing the orders, the burden was on mother to inform the circuit court what orders she was appealing from the JDR court.[5] *Cf. Forte v. Commonwealth, Dep't of Soc. Servs., Div. of Child Support Enf't, ex rel. Newsome*, 65 Va. App. 1, 6 (2015) (noting that, for purposes of determining whether an appeal bond is required under statute governing the posting of bond in appeals from the JDR court to the circuit court, "an appellant bears the burden of clarifying what he appeals from juvenile court to circuit court").  At the hearing, mother failed to inform the circuit court that she was appealing the order granting father increased visitation and instead limited her appeal of the JDR orders solely to the denial of her motion for supervised visitation. Because mother failed to inform the circuit court of her appeal of the order granting father increased visitation, she waived any argument concerning that appeal.  Thus, on appeal, we do not address mother's argument regarding the lack of evidence of a change in circumstances justifying increased visitation for father.[6]

---

increased visitation.  Rather, based on counsel for mother's initial representation, the circuit court continued to proceed with the only matter it thought was before it, the appeal of the JDR order denying mother's motion for supervised visitation.

[5] We acknowledge that during the *de novo* hearing in circuit court, "the burden of proof remain[ed] upon the party with whom it rested in the juvenile court."  *Box v. Talley*, 1 Va. App. 289, 292 (1986).  Therefore, on his motion to amend visitation, first heard in the JDR court and then in the trial *de novo* in the circuit court, father had the burden of proving that a material change in circumstances had occurred to allow the court to increase his visitation with L.W.  *See Albert v. Ramirez*, 45 Va. App. 799, 806-07 (2005) ("[I]n cases involving the modification of an existing valid custody order, the party seeking the modification bears the burden of proving that a material change of circumstances has occurred since the entry of the initial order and that a change in custody would be in the best interests of the child.").  However, father no longer had the burden of proving a material change in circumstances after mother informed the circuit court that the only issue in the *de novo* hearing was the JDR order denying her motion for supervised visitation.

[6] Once the circuit court held a hearing on mother's motion for supervised visitation, the JDR court's ruling on that issue was annulled.  *See Robert & Bertha Robinson Family, LLC v. Allen*, 295 Va. 130, 150 (2018) ("The 'event' that triggers the 'annulment of the district court judgment' is the trial de novo . . . not the notice of appeal.").  However, because the circuit court

## B. Motion to Reconsider[7]

Mother also argues that the circuit court erred in denying her motion to reconsider.

In her motion to reconsider before the circuit court, mother asked the court to reconsider its ruling on the same ground discussed above, noting that there was no evidence presented at the hearing of any change of circumstances since the April 2019 JDR order that would allow the court to increase father's visitation. In the motion, counsel for mother candidly acknowledged that he had not raised this issue at trial but asked the court to either hold another hearing allowing father to present evidence of a change in circumstances from the April 2019 JDR order that would justify his increased visitation, or, alternatively, reinstate the April 2019 JDR order.

Because mother's motion, although styled solely as a motion to reconsider, asked the court to either reconsider its decision by reinstating the prior visitation order or, alternatively, to hold another hearing, we treat mother's motion as a both a motion to reconsider and motion to reopen the evidence.

"Motions . . . to reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). Thus, "[w]e review a trial court's denial of a motion to reconsider for an abuse of discretion." *Winston v. Commonwealth*, 268 Va. 564, 620 (2004). "When we say that a circuit court has discretion, we mean that 'the [circuit] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021) (alteration in original) (quoting *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "[O]nly when reasonable jurists could not differ can we say an

___

never held a hearing *de novo* on mother's appeal of the order granting father increased visitation, that specific ruling of the JDR court was not annulled by mother's noticing an appeal of that order.

[7] This section addresses mother's fourth assignment of error.

abuse of discretion has occurred." *Id.* at 11 (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

We conclude, for the same reason expressed above, that the circuit court did not abuse its discretion in denying mother's motion to reconsider. Here, mother herself framed the *de novo* hearing before the circuit court as a hearing only on her motion for supervised visitation for father. Mother then acknowledged that through this mistake, no evidence was presented as to a change in circumstances that would justify father's increased visitation. After being made aware of counsel's mistake, the circuit court was within its discretion to uphold the entirety of the August 2020 JDR orders, including the ruling granting father increased visitation, because mother herself had waived her appeal of other matters by limiting the issue at the *de novo* hearing to her motion for supervised visitation. Adopting mother's suggested relief on the motion to reconsider—that the circuit court reinstate the April 2019 JDR order—would have been detrimental to father, who had litigated the issue at the August 2020 JDR hearing and was entitled to rely on that court's ruling after mother herself failed to inform the court that she was appealing that specific ruling.

Likewise, "[t]he granting or denying of a motion to hear additional evidence is [also] within the sound discretion of the trial court." *Rowe v. Rowe*, 24 Va. App. 123, 144 (1997). "After a court has concluded an evidentiary hearing 'during which each party had ample opportunity to present evidence, it [is] within the court's discretion to refuse to take further evidence on this subject.'" *Holmes v. Holmes*, 7 Va. App. 472, 480 (1988) (alteration in original) (quoting *Morris v. Morris*, 3 Va. App. 303, 307 (1986)). "In order to demonstrate an entitlement to a rehearing, a petitioner must show either an 'error on the face of the record, or . . . some legal excuse for his failure to present his full defense at or before the time of entry of the decree.'" *Id.* (quoting *Downing v. Huston, Darbee Co.*, 149 Va. 1, 9 (1927)). "[C]ourts have

also included among the factors to be applied in the analysis whether a party seeking rehearing had 'ample opportunity to present evidence' at the initial hearing . . . ." *Shooltz v. Shooltz*, 27 Va. App. 264, 269 n.1 (1998) (quoting *Rowe*, 24 Va. App. at 144). In making its decision, the court may consider whether "reopen[ing] a hearing would cause prejudice, delay, confusion, inconvenience, surprise or injustice to the opposing party." *Id.*

We also conclude that the circuit court did not abuse its discretion in refusing to conduct another hearing. First, mother fails to articulate an error on the face of the record. While she notes that father did not present any evidence as to a material change in circumstances since the April 2019 JDR order, there is no indication from the record that the JDR court's determination that such a change had been shown, and that father should have been granted increased visitation with L.W., was made in error. Second, there was ample opportunity at the initial hearing for the circuit court to hear evidence as to a change in circumstances regarding father's increased visitation, but mother herself limited the consideration of evidence to her appeal of her motion for supervised visitation. Finally, reopening the evidence would have caused delay and inconvenience to father, the opposing party. Giving mother another opportunity to litigate her appeals from the August 2020 JDR orders would create another court date for father and prolong the uncertainty in his visitation schedule with L.W. *See Thomas*, 62 Va. App. at 110 (affirming trial court's denial of a motion to reopen while noting that "[o]ne factor a trial judge may consider—and understandably discount—is a moving party's desire simply to change his mind about a concession previously made, particularly one relied upon by the opposing party and the court").

For these reasons, the circuit court's refusal to grant mother's motion for reconsideration or reopen the evidence for another hearing was not an abuse of discretion, and thus we find no error in the court's ruling.

Mother also argues that the circuit court erred in refusing to admit evidence of father's violent behavior that occurred prior to the April 2019 JDR order.[9]  Mother argues that this was error because the issue before the circuit court was not solely whether there had been a material change of circumstances, but also what would be in the best interest of L.W.  Therefore, the evidence of father's prior violence should have been admitted because it was relevant as to the best interests of L.W.

On appeal, we "review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to [exclude] evidence absent a finding of abuse of that discretion."  *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (alteration in original) (quoting *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 92 (2014)).

As noted above, when a party files a motion to amend an existing visitation order, courts ask "first, has there been a change in circumstances since the most recent custody [or visitation] award; second, would a change in custody [or visitation] be in the best interests of the children." *Rhodes*, 66 Va. App. at 709 (quoting *Keel*, 225 Va. at 611).  "The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation when subsequent events render such action appropriate" for the child's welfare.  *Wilson v. Wilson*, 18 Va. App. 193, 195 (1994) (quoting *Eichelberger v. Eichelberger*, 2 Va. App. 409, 412 (1986)).  However, if the court does not first find a material change in circumstances, consideration of the "best interests

---

[8] This section addresses mother's second assignment of error.

[9] This evidence of events that occurred from 2005 through 2018 consisted of police reports involving father and his ex-girlfriend, text messages from father that included threats and an acknowledgment that he had been "rough" with his children in the past, arrest warrants for father for assault and property damage against mother, and protective orders for mother against father.

of the child" is barred by the principles of *res judicata*. *See Sullivan v. Knick*, 38 Va. App. 773, 782 (2002) ("In the absence of a material change in circumstances, reconsideration . . . would be barred by principles of *res judicata*." (quoting *Hiner v. Hadeed*, 15 Va. App. 575, 580 (1993))); *see also Parish v. Spaulding*, 26 Va. App. 566, 573 (1998) ("The purpose of the changed circumstances requirement is to avoid the bar on relitigation that would otherwise be imposed by *res judicata*.").

Based on these well-established principles, we conclude that mother's argument that the court was required to admit evidence of father's actions prior to the April 2019 JDR order is without merit. Here, evidence of father's actions prior to the April 2019 JDR order was not relevant as to whether a material change in circumstances had occurred since that order was entered.[10] Without that threshold finding, *res judicata* prohibited the circuit court from considering *Keel*'s second prong regarding the best interests of the child. Accordingly, the circuit court did not err in refusing to admit evidence of father's violence that occurred prior to the entry of the last visitation order.

### D. Relevance of Father's JDR Court Testimony

Finally, mother challenges a statement made by the circuit court in its ruling. In denying mother's motion for supervised visitation for father, the circuit court stated, "As far as what

---

[10] At oral argument, mother relied on language from *Turner v. Turner*, 3 Va. App. 31 (1986), to support her position that the circuit court should have considered the evidence of father's prior violence. In *Turner*, we stated that due to the high volume of child custody cases, "where a different trial judge is called upon to consider the evidence in support of and in opposition to a subsequent custody petition, consideration of evidence which establishes background information and permits the trial judge to understand the alleged change in circumstances is permissible." *Id.* at 33. However, our Court then made clear that "[s]uch evidence, however, is not to be used to retry the issues resolved in the prior proceedings." *Id.* It is clear from the record that the evidence mother attempted to introduce was not merely background information to provide clarity to the circuit court as to any changed circumstances since the April 2019 JDR order. Rather, it was direct evidence of father's past behavior that mother had had the opportunity to present to the JDR court prior to the entry of the April 2019 visitation order.

- 14 -

testimony he put on in lower court, I don't think that it is really relevant here." Mother argues that this statement was in error because this testimony was relevant as to father's credibility.

However, mother did not object when the circuit court made this statement during its ruling. Further, in her motion for reconsideration, she merely stated "that the [c]ourt did not consider relevant the testimony of [father] in the hearing on this case before the JDR [c]ourt because the case was *de novo* before this [c]ourt," and did not argue that the circuit court erred in not considering father's JDR court testimony relevant. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal. A trial court must be alerted to the precise issue to which a party objects." *Fox v. Fox*, 61 Va. App. 185, 201 (2012) (citation omitted). Because mother failed to alert the circuit court to the alleged error, she has waived appellate review of this issue under Rule 5A:18.

<u>Attorney Fees</u>

Father requests that this Court award him his attorney fees incurred on appeal. This Court has discretion to grant or deny attorney fees incurred on appeal. *See* Rule 5A:30(b); *see also O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." *Alwan v. Alwan*, 70 Va. App. 599, 613 (2019) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)). In making this determination, this Court must "consider all the equities of the case." Rule 5A:30(b)(3). In addition, the Court's decision is not limited to whether a party prevailed on appeal but considers whether the issues raised were "frivolous." *Wright v. Wright*, 61 Va. App. 432, 470 (2013)

(quoting *O'Loughlin*, 23 Va. App. at 695). After considering the record before us, we deny father's request for appellate attorney fees.

### III. CONCLUSION

Based on the foregoing, we hold that the circuit court did not err in conducting a hearing solely on mother's motion to amend visitation or in denying mother's motion for reconsideration. The circuit court also did not abuse its discretion in refusing to admit exhibits which tended to prove prior violence by father. We further conclude that mother failed to preserve her challenge to a statement made by the circuit court in its ruling. Accordingly, we affirm the judgment of the circuit court.

*Affirmed.*